## HENRY LLOYD

### *v.*

## THE CATLIN COAL COMPANY.

*Opinion filed June 23, 1904.*

1. INJUNCTION—*prevention of multiplicity of suits as ground for injunction.* Granting an injunction to prevent a multiplicity of suits between two persons is allowable where the whole controversy arises out of the same matter and has been settled at law, and further litigation, which seems purely vexatious, is persisted in.

2. SAME—*equity will not ordinarily enjoin a repetition of trespasses.* Where the damages for trespass may be estimated in money and compensation awarded, a court of equity will not enjoin further trespass upon the ground of prevention of a multiplicity of suits between the same two persons.

3. SAME—*what is meant by "irreparable injury."* An injury may be irreparable either from its own nature, as when the party injured cannot be compensated in damages or the damages cannot be measured by any certain pecuniary standard, or where it is shown the party who must respond is insolvent.

4. REAL PROPERTY—*right of surface owner to support of soil is abso-lute.* The owner of minerals who, in mining and removing them, damages the soil by depriving the same of its subjacent support is liable in damages to the owner of the surface estate, without any regard to the degree of care with which minerals were removed.

5. EQUITY—*what amount of coal may be mined will not be determined by a court of equity.* What amount of coal may be safely mined and what amount must be left for necessary support of the soil are largely engineering questions, and it is only in rare cases, where the remedy at law is so inadequate as to render such course neces-sary, that a court of equity will direct the work by injunction.

6. SAME—*when court may refuse to grant an injunction.* A court of equity may, in its sound discretion, refuse to grant an injunction, where the defendant's damages and injuries will be greater by granting the writ than will be the complainant's damages from its refusal or his benefits from its allowance.

*Lloyd* v. *Catlin Coal Co.* 109 Ill. App. 37, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. FRANK K. DUNN, Judge, presiding.

LAWRENCE & LAWRENCE, for appellant.

H. M. STEELY, and J. B. MANN, for appellee.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

At the January term, 1902, of the circuit court of Vermilion county, appellant brought his suit at law against appellee in an action on the case, averring in his declaration that he was the owner of the surface of certain lands in that county and that appellee was the owner of the coal and mineral beneath the same, and that appellee had so mined said coal as to leave insufficient support for the surface of the land, in consequence of which appellant's land had subsided and other portions were sub-siding, to the damage of the plaintiff. The cause was heard and a judgment obtained by the plaintiff for $6000. At the May term of said court the present bill was filed,

seeking to enjoin appellee from mining coal in the manner it was doing, and praying that the court should direct that the coal should be mined in a particular manner mentioned in the bill and ·hereafter mentioned in this opinion. Answer and replication were filed, and the cause was referred to the master to report conclusions of fact and of law. The master took the evidence of many witnesses and prepared his report, in which he recommended that the bill be dismissed for want of equity. Objections were filed to the findings of the master and overruled, and upon exception heard before the court the master's report was approved and decree entered dismissing the bill. The cause was appealed to the Appellate Court for the Third District, where the decree of the circuit court was affirmed, and the cause is appealed to this court.

The bill proceeds upon the theory that in order to save appellant from suffering damages to his land by the subsidence thereof, the court should restrain appellee from removing the coal from under the same at all, or direct the specific manner in which the same should be mined. Appellant urges that his bill is founded on two well recognized grounds of equity jurisdiction: First, to save a multiplicity of suits; and second, to prevent irreparable injury.

We have not understood the first ground here invoked as applying to the case of frequent or repeated suits between the same parties for repeated trespasses committed by one against the lands or chattels of the other. Each trespass is a new and distinct cause of action, usually dependent upon its own facts, and ordinarily, where the damages are of such character that they may be estimated in money and compensation awarded, equity will refer the parties to their action at law. The rule is stated by Chancellor Kent thus: "A court of equity will sometimes interfere to prevent a multiplicity of suits by a bill of peace. (Citing authorities.) But that is only in cases where the right is controverted by numerous persons,

each standing on his own pretensions, and it has no application to the case of one or more persons choosing to persevere in acts of trespass in despite of suits and recoveries against them." (*Jerome* v. *Ross*, 7 Johns. Ch. 335.) And to the same effect are *Chicago Public Stock Exchange* v. *McClaughry*, 148 Ill. 372, and *Chicago General Railway Co.* v. *Chicago, Burlington and Quincy Railroad Co.* 181 id. 605. The cases where equity will enjoin to prevent a multiplicity of suits between two persons, only, are where the whole controversy arises out of the same matter and has been settled at law, and further litigation, which seems purely vexatious, is persisted in. (*Imperial Fire Ins. Co.* v. *Gunning*, 81 Ill. 236; *Pratt* v. *Kendig*, 128 id. 293.) The latter case cited is relied upon by appellant but does not support his contention. It is authority for the proposition that a party who has established his rights at law may, by injunction, restrain further and vexatious litigation in relation to the same matter by an original party or those claiming in privity with him.

As to the injury, the bill alleges that it was the duty of the defendant to leave in place and in the natural condition one-half of the coal, to properly and permanently support the surface, and that the coal left should be equally proportionate with the space mined, and that the width mined should not in any case or at any place in said mine exceed twelve feet; that defendant did not leave in place and so distribute beneath the surface one-half of the coal as pillars and supports, but that said coal was mined in an irregular manner, so that many rooms of said mine were as wide as thirty feet and two hundred feet long, and the pillars of coal left between said rooms were in many places not to exceed six feet in width, and in other places much greater blocks or pillars are left in place than the adjoining space that was mined, but the spaces left are too distant from the supporting blocks or pillars; that the surface is left without sufficient support and will necessarily subside; that blocks

and pillars left are fractured, loosened and weakened by blasting powder used in mining said coal; that the coal is one hundred and eighty feet below the surface, and that defendant has mined sixty-four acres beneath complainant's land; that three-fourths of an acre of complainant's land has subsided two and one-half feet, and that "large portions of the sixty-four acres of the surface of said land which has been mined beneath will, in all reasonable probability, subside in the same manner, leaving the land full of holes and subsidencies, rendering it unfit for farming, being the purpose for which it is now used, since changed from its natural state more than twenty-five years ago; that because of said negligent mining the land so mined beneath has become irreparably damaged." There is no allegation that the damages may not be readily susceptible of computation, or that the defendant is insolvent or unable to respond in whatever amounts the damages may be fixed, whether in one or many actions of trespass. The bill alleges that the lands are farm lands, and there are no facts stated from which the inference of law must arise that full compensation could not be had in an action at law. The bill alleges that "because of said negligent mining the land so mined beneath has become irreparably damaged." This latter allegation is as to a condition or result already existing and which the injunction could not alter. There is also the further allegation that other portions of said land will, in all reasonable probability, subside.

The rule, as usually stated, is, that "an injury is irreparable either from its own nature, as when the party injured cannot be adequately compensated therefor in damages, or when the damages which may result therefrom cannot be measured by any certain pecuniary standard, or when it is shown the party who must respond is insolvent, and for that reason incapable of responding in damages." (16 Am. & Eng. Ency. of Law,—2d ed.—361.) There is no allegation here showing that the nature

of the property in question, taking the uses to which it is adapted and now put into consideration, is such that complainant may not be adequately compensated therefor in damages. The uses, so far as shown by the bill, are not exceptional or unusual, but like that of ordinary farm lands, and it could hardly be, where there was no actual taking of the inheritance, that a slight subsidence of the soil of a farm could not be compensated. The bill does not state the thickness of the vein of coal or the perpendicular extent of the excavation. It might be that there could be mining of such character, because of the extent of the excavation, that subsidence would result in the practical destruction of the surface; but a variance of two and a half or three feet in the surface could hardly be said to be either a destruction or a taking of the inheritance of a farm. In a city where the use of the land is mainly for the support of buildings and costly improvements, a subsidence of much less than here charged would doubtless work such irreparable injury as would be staid by injunction. The scope of the evidence is much broader than the allegations of the bill. It is shown that part of the land is so near to a village that it might be platted and sold for residence lots and that upon a part of the land appellant has a residence, but we cannot aid the defects of the bill by the evidence. It is doubtful, to say the least, if the bill is sufficient, upon its face, to entitle appellant to the relief prayed.

If the bill could be held to state a case that would entitle appellant to any relief, we are of opinion that the court, upon the report of the master to whom the cause was referred to state conclusions of law and fact, properly dismissed the same. The report shows that appellant and appellee both derived title to their land from one Harvey Sandusky, who was owner of all the land in question and other lands adjoining, in 1864, and in that year sold and conveyed the coal and mineral beneath the surface to one Faulds, with the right to dig or

210—30

excavate said coal and minerals, and to erect the necessary machinery, sink shafts, enjoy right of way over and through the premises, and to use and occupy so much of the surface as necessary to the mining of said coal and minerals and to flow the water from said mine over and through the same; that appellant, in 1871, through *mesne* conveyances from Sandusky, became the owner of two hundred acres of said land, subject to the conveyance to and rights of said Faulds, and has ever since said time owned and been possessed thereof; that in 1895 appellee purchased the coal and mineral rights of said Faulds and sank its shaft on lands adjacent to those of appellant, and by tunnels worked and mined the same and took possession thereof and has ever since operated said mine; that there are two veins of coal under said land,—the lower or Grape Creek vein at a depth of one hundred and sixty-four feet, and the upper or Danville vein at a depth of one hundred and thirty feet; that from within eighteen feet of the surface to the Danville vein is a layer of soapstone or shale, then the latter vein of six feet, then thirty-two feet of shale or slate overlying the Grape Creek vein; that appellee is mining the lower vein, and has driven entries seven and one-half feet wide under appellant's land and left pillars of coal twenty-four to forty feet thick; that off the entries rooms are worked, the room necks being fourteen feet long and seven feet wide, and the rooms are twenty-five to twenty-eight feet wide, with pillars thirteen to fourteen feet between rooms; that the system of mining is the "room and pillar" system, and the one that prevails in this State; that in the fall of 1901 three-fourths of an acre of complainant's land subsided, and another subsidence took place upon the highway and extended upon complainant's land, and complainant brought his action at law and recovered a judgment against defendant for $6000 damages for the subsidence of the two places and other parts of his land, being about sixty acres, which he alleged would subside;

that the trial at law was had on March 12, 1902, and the bill herein was filed May 9, 1902; that the forty acres of complainant suitable for town lots are worth $150 to $300 per acre and the remaining one hundred and sixty acres worth $120 to $150 per acre; that the coal being mined will run 7200 tons to the acre; that in or under complainant's land there are "horse-backs" or faults, where, from the conformation of the coal stratum and the shale and slate overlying it, the coal cannot be mined at all and much of it is left untouched; that the condition can only be ascertained by attempting to mine the coal or excavating to it; that upon the question of how the coal should be mined to properly support the surface the witnesses differ, some testifying that as defendant is mining this coal there will be a subsidence of the surface, and an equal number testifying that there would be no subsidence with the present system, and those instances where subsidences have occurred are explained by showing that miners, contrary to the rules and directions of the defendant, "robbed" or weakened the pillars to save themselves extra labor in cutting for air passages; that several of complainant's witnesses testified that it will require fifty per cent of the coal, in the form of pillars, to maintain the surface, and that in some places more will be necessary and in others less, and the witnesses for complainant do not agree as to the necessary dimensions of the rooms, entries and pillars; that some witnesses testify the surface will sink if the rooms are of greater dimensions than six feet, while others testify they may safely be, some say twelve feet, some say eighteen feet, and others say twenty, twenty-six and twenty-eight feet. The master concludes that the evidence is so conflicting that it is impossible to tell whether the surface of complainant's land, or any part of it, will subside at all, or, if so, when, to what extent, or whether complainant will be injured at all thereby. He further finds that the court could not, from the evidence, tell

what kind of an injunction to grant, if it should be conceded that complainant is entitled to that remedy.

The complainant prays that the decree shall specify how the mine shall be worked, and that no rooms shall be greater than twelve feet and fifty per cent of the coal shall be left intact, while the preponderance of the evidence is that in some places fifty per cent left in place would be sufficient, in other places that would be more than necessary and in others not enough, and that the preponderance of the evidence is that rooms of greater dimensions than asked for in the bill can be worked with safety to complainant's lands; that the evidence shows there is no rule by which a court can specify in what manner the work shall be done, how much coal shall be removed or what size the rooms shall be, as all these matters depend upon the conditions as they are found in the different portions of the mine.

We have carefully examined the evidence and are satisfied with the conclusions of fact reached by the master. In considering this case we must keep in mind the rights of both parties to this litigation. Each has rights that must be recognized and conserved by the courts. Appellant owns the surface, and as a matter of law is entitled to support from the subjacent owner. This right of support is absolute and without condition, not dependent upon the order of a court of chancery by injunction or upon the degree of care that may be used by appellee in the prosecution of its work. If by the removal of any of the coal or mineral under the land, though under the most approved system of mining, complainant, as the owner of the superincumbent and superior estate, is deprived of the necessary support for his land, then that moment liability to respond in damages rests on appellee. *Wilms* v. *Jess*, 94 Ill. 464; *Noonan* v. *Pardee*, 200 Pa. St. 474; 86 Am. St. Rep. 722.

Appellant urges that the court should either determine what portion of the coal under his premises may

be removed, and direct the manner of its removal, size of entries, rooms and pillars, or declare that none shall be removed, and in support of that contention cites a number of cases which do not go to the extent claimed and do not support the contention. In the cases cited, the relief prayed and granted was in cases were the defendant either had no right to the strata, or where it was sought to restrain the doing of some specific act, readily susceptible of proof, that would endanger or infringe the complainant's right of support. Among the cases cited is *Thomas Iron Co.* v. *Allentown Mining Co.* 28 N. J. Eq. 77. There the defendant lessee had worked out the mine and was proceeding to "rob" or reduce the pillars left and necessary to support the roof of the mine and prevent its caving in and the mine becoming flooded. The wrong was single, specific and clear, the consequences reasonably certain, and the court enjoined the act. In the case at bar appellee is entitled to all the coal and minerals under appellant's land, save so much as is necessary to be left in place for proper support. That at least thirty-five per cent of the coal can be removed without injury to appellant is conceded, save in places where there are faults and horse-backs, where none is sought to be removed. How much more can be removed is uncertain and depends upon local conditions as the work progresses. If the court should require appellee to leave an amount of coal in the mine, in the form of pillars, in excess of the amount necessary to properly support appellant's land, wrong and injustice would be done appellee, which is contrary to the conception of a court of equity. If the court should grant the prayer of appellant's bill and direct that rooms twelve feet in width should be worked and twelve-foot pillars left, in the face of testimony showing that in places that would be insufficient to support appellant's land, and the land should subside, then appellant would, by the decree of the court, be deprived of the remedy the law insures him of having full and ade-

quate damages from appellee.  In the consideration of such cases it is the duty of the court to consider the inconvenience and damage that will result to the defendant as well as the benefit to accrue to the complainant by the granting of the writ, and where the defendant's damages and injuries will be greater by granting the writ than will be the complainant's benefit by granting the writ, or greater than will be complainant's damages by the refusal of it, the court will, in the exercise of a sound discretion, refuse the writ.  *Fullenwider* v. *Supreme Council of Royal League,* 180 Ill. 621; *Miller* v. *Cook,* 135 id. 190; *Seeger* v. *Mueller,* 133 id. 86.

In the case at bar the evidence shows that the single vein of coal being worked will produce 7200 tons of coal per acre, and at one cent per ton the profit would be $72, and as the profit is several cents per ton and the coal far more valuable than the surface, the court should hesitate to declare the coal cannot be removed at all but must be left to support appellant's land, unless the evidence should be so clear and convincing of the necessity of such a course that no other were open.  What amount of coal must be left is a question of fact which must be ever difficult of determination, and can be best dealt with by those acquainted with the science of mining, as the work progresses.  It is largely a question of engineering, and courts will encounter great difficulty in assuming, and will only in rare cases, where the remedy at law is so inadequate as to render such course necessary, assume, charge of the operation of such work and direct the manner in which it shall be done.  *Chicago and Eastern Illinois Railroad Co.* v. *Driscoll,* 176 Ill. 330; 2 High on Injunctions, sec. 1186; *Walker* v. *M. R. R. Co.* 8 Ohio, 38; *Cooper* v. *Williams,* 4 id. 253.

The court did not err in dismissing appellant's bill. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*