RUSSELL D. HILL et al. Appellants, vs. CURTIS N. KIMBALL et al. Appellees.

*Opinion filed October 27, 1915.*

1. HIGHWAYS—*difference between a common law and a statutory dedication.* A statutory dedication vests the legal title to the ground set apart for public purposes in the municipal corporation in trust for the public, while a common law dedication leaves the title to such ground in the original owner, charged, however, with the public easement.

2. SAME—*effect where streets and alleys in statutory plat are vacated by ordinance.* Where the streets and alleys shown on a statutory plat are vacated by ordinance, the fee thereof reverts to the dedicator, his heirs and assigns, and not to the abutting lot owner and his grantees, and neither the legislature nor the city can divest him of such title.

3. SAME—*what does not affect validity of vacation proceedings.* The power of a city to vacate streets and alleys must be exercised in the public interest and not solely to benefit private parties; but the validity of vacation proceedings is not affected by the fact that the land embraced within the street or alley vacated reverts to the dedicator or the adjoining owner and becomes private property.

4. SAME—*parol evidence not admissible to show that vacation ordinance was for private benefit.* Parol evidence is not admissible to show that a vacation ordinance was passed for private benefit, particularly where the ordinance recites that the streets and alleys are no longer required by the public and that the public interest will be subserved by their vacation.

5. SAME—*when property owner is entitled to damages for vacating streets and alleys.* If property sustains a special and peculiar damage from the vacation of streets and alleys the owner is entitled to damages even though the property does not abut upon the streets or alleys vacated, but it is not essential that such damages be ascertained before the vacation.

6. INJUNCTION—*when property owner is not entitled to injunction against vacating alley.* One whose property abuts upon an alley shown on a statutory plat may be entitled to damages for the closing of the alley in pursuance of a vacation ordinance regularly passed by the city in compliance with the statutory requirements, but he is not entitled to injunctive relief.

7. SAME—*what should be considered where mandatory injunction is asked for.* Where a mandatory injunction is asked for, the

court should consider the inconvenience and damage that will result to the defendant as well as the benefit to accrue to the complainant from granting the writ, and must determine, in the exercise of a sound discretion, whether the writ shall issue.

APPEAL from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding.

McCULLOCH & McCULLOCH, and RALPH J. DADY, for appellants.

CHARLES L. BARTLETT, SHERMAN C. SPITZER, ROBERT HUMPHREY, ELAM L. CLARKE, and SAMUEL S. HOLMES, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed by appellants in the circuit court of Lake county for a mandatory injunction, praying that a certain ordinance passed by the city council of Highland Park purporting to vacate certain streets and alleys in a certain subdivision in said city be held null and void, and that appellees be enjoined from interfering with or obstructing access to or egress from said vacated streets and alleys. Appellees filed their answer, and after a hearing had before the chancellor the court entered a decree dismissing the bill for want of equity. From that decree this appeal has been taken.

The alleys and streets in question are in Hitch's Fairview subdivision in said city, platted in 1895. It was stipulated during the trial that said plat constituted a statutory dedication of all the streets and alleys shown thereon, to the public, and that said dedication was accepted and said streets and alleys used as such by the public and abutting owners. Shortly after the platting, the owner, Hitch, conveyed all the premises in said subdivision by metes and bounds to Axel Chytraus, and by *mesne* conveyances the title to lots 2, 3, 4 and 25 became vested in 1896 in appel-

lant Hill. The title to lots 5 and 6 became vested in the same year in appellant Ellen C. Green, who is the mother of Hill's wife. April 3, 1906, the city council of Highland Park, on Hill's request, vacated the alley which ran between lots 3, 4 and 25, and Hill thereupon caused the lots and the portion of the alleys vacated to be re-platted. April 15, 1910, the city council of Highland Park passed an ordinance vacating certain streets, avenues and alleys in said subdivision, including the alley which ran back of lots 25, 5 and 6, and also Oakdale avenue, which ran south from a point directly in front of lot 25. Hitch's Fairview subdivision (with the streets and alleys vacated by the ordinance of April 15, 1910, indicated by shading,) is shown on the following plat:

By various conveyances practically all of the subdivision except that owned by appellants had been acquired by appellee Curtis N. Kimball previous to the institution of

this litigation. In April, 1910, Chytraus conveyed to one Weiboldt all his reversionary interest in the streets and alleys in said subdivision, and Weiboldt conveyed to said Kimball all those streets and alleys, and parts thereof, vacated by said ordinance. Kimball afterwards conveyed to the appellees Charles Yeomans and Maud G. Yeomans, for $10,000, a tract covering substantially lots 7 to 15, inclusive, and the north part of lot 19, with the alleys originally platted between said lots. Kimball also conveyed to appellee Arthur G. Brown, for $6500, a tract covering substantially lots 16 to 24, inclusive, except the north part of lot 19, and including the portions of the alleys as originally platted between or immediately adjacent to the boundaries of said lots.

The record shows that from the time of the original platting of this property to the date of the vacation ordinance,—about fifteen years,—some ten of the 171 lots of said subdivision had been sold, six of this number being owned by appellants. It appears, also, that after it was originally platted, wooden sidewalks were built along most of the streets so platted. Before the beginning of this litigation practically all of them had rotted away. The evidence tends to show that most of the streets and alleys at the time of the passage of the vacation ordinance were little used as public thoroughfares, many of them being grown up with saplings, brush and weeds. The evidence is also to the effect that a considerable portion of the city of Highland Park is made up of expensive residences, built upon large tracts of ground, many of them without alleys in the rear; that the possibility of causing the land in this subdivision to be sold in tracts of several acres each and built up with large residences was the chief reason which caused Kimball, after the streets and alleys had been vacated by the said ordinance of April 15, 1910, to purchase this property and improve it; that after the purchase of this property he caused to be constructed in Fairview ave-

nue water and sewer mains, macadamized said avenue and put down a cement sidewalk on one side, at a total cost to himself of over $13,000, and had done other work on the subdivision amounting to several thousand dollars. The testimony shows that Mrs. Green erected a frame residence on her lots 5 and 6 in said subdivision in 1907 and lived there during the following winter and the next year; that since then the property has been leased to tenants, appellee Yeomans occupying the house during a part of the years 1909 and 1910; that there was a gate opening from the rear of these lots onto the alley as originally platted; that while Mrs. Green lived there this gate was used in going out and passing through the alley; that appellant Hill, in the summer of 1906, after he had purchased lot 25, built a barn thereon, twenty-seven by forty feet in size; that he had used said barn for residence purposes, living there himself three summers; that since then it has been rented at times to tenants; that while he lived there he made use of the alley in the rear of his property; that he had hauled lumber and wire through the alley and had built a sewer in the alley running parallel to Fairview avenue, north of said lot 25. His testimony was to the effect that the vacating of the alleys next to his and Mrs. Green's lots lessened the value of the property. There is other testimony in the record, given on behalf of appellees, that tended to show that the property of appellants was not injured in value by the vacation of the streets and alleys in question. Yeomans and Brown testified that since they had purchased their tracts from appellee Kimball they had improved the property by grading, tiling and setting out trees but had erected no buildings; that they intended to build on the property but had not done so because of the starting of this litigation. Both Hill and Mrs. Green testified that they knew nothing about the vacation ordinance until several months after it was passed, being out of the State at the time, Hill learning of it in June or July, 1910, and Mrs. Green a

month or two later. They made no formal objection to the vacation ordinance until June 11, 1912, when they joined in filing in the recorder's office of Lake county a notice, in which they stated that it was null and void and notified all parties to refrain from obstructing said alleys and streets so attempted to be vacated. No further action was taken by them until the bill of complaint in this case was filed, July 8, 1913.

Counsel for appellants strongly urge that the vacation ordinance in question is so grossly unreasonable as to render it void. "The plenary power of the legislature over streets and highways is such that it may, in the absence of special constitutional restriction, vacate or discontinue the public easement in them or invest municipal corporations · with this authority. But the power to vacate streets and public places is not inherent in a municipality by reason of its creation and existence, nor is it implied from the fact that it is vested with general control over such streets and places. The power must be expressly conferred by legislative enactment or must be necessary to the exercise of some power expressly conferred, and any requirements imposed by statute must be substantially complied with." (3 Dillon on Mun. Corp.—5th ed.—sec. 1160.) The doctrine just stated has been quoted with approval by this court in *Cicero Lumber Co. v. Town of Cicero,* 176 Ill. 9, and other cases. (See to the same effect, McQuillin on Mun. Corp. sec. 1402.) Under section 1 of chapter 145 of the Revised Statutes (Hurd's Stat. 1913, p. 2477,) the legislature has given authority to municipal authorities to vacate streets and alleys by a three-fourths vote, with the added provision that "when property is damaged by the vacation or closing of any street or alley, the same shall be ascertained and paid as provided by law." The record shows that the vacation ordinance here in question was passed by more than a three-fourths vote of the members of the city council of said city of Highland Park, and no point is made

that all of the statutory formalities were not complied with. The legislature has also in the City and Village act (art. 5, sec. 1, par. 7,) granted specific power to municipalities to lay out, establish, open, alter, widen or vacate streets and alleys. In *Parker* v. *Catholic. Bishop,* 146 Ill. 158, this court, in discussing a question similar to the one here involved, said (p. 165) : "The municipality holds the streets and alleys of the city in trust for the general public, and by the statute is given power to vacate the same whenever the public interest or convenience, in the exercise of a reasonable discretion, shall seem to such authority to require it."

The city authorities, in establishing or regulating streets and alleys within the municipality, may take any action not incompatible with the end for which streets and alleys are established, and when exercising such discretionary power in regard to them, a court of equity has no jurisdiction to interfere unless the power or discretion is manifestly being abused to the oppression of citizens,—that is, is being unreasonably exercised. (*City of Mt. Carmel* v. *Shaw,* 155 Ill. 37.) It is a question for the court to decide whether any ordinance is unreasonable. (*Murphy* v. *Chicago, Rock Island and Pacific Railway Co.* 247 Ill. 614.) The power to vacate a street or alley is to be exercised in the public interest and not for the sole purpose of benefiting private parties. The validity of the proceedings, however, will not be affected by the fact that the land embraced within the street or alley vacated thereby reverts to the adjoining owners or the dedicator and becomes private property. (*People* v. *Wieboldt,* 233 Ill. 572, and cases cited.) "Nor does it seem material that the vacation is made with the view or intention of vesting the adjoining proprietors with the ownership of the land embraced within the street. That merely goes to the motive by which the act of vacation is performed, and in that, as in all legislative acts, the motives by which the legislative body is actuated are immaterial and

cannot be inquired into." (*Meyer* v. *Village of Teutopolis*, 131 Ill. 552; Cooley's Const. Lim.—5th ed.—p. 222.) Parol evidence is not admissible to show that a vacation ordinance was passed for private benefit or was otherwise invalid. (*City of Amboy* v. *Illinois Central Railroad Co.* 236 Ill. 236, and cited cases; 1 Lewis on Eminent Domain,—3d ed.—sec. 209.) The well known author just cited has stated that "the power to vacate and close public streets is as necessary for the public good as the power to establish them, in order that the public may be relieved of the expense of maintaining useless streets and highways and from liability for their non-repair or defective condition, and in order also that, though the ways are not useless, the space occupied by them may be devoted to more pressing public needs or that improvements for the public safety and welfare may be carried out." (1 Lewis on Eminent Domain,—3d ed.—sec. 196.) The motives which may induce municipal authorities to vacate public streets or alleys are usually of a mixed character. Regard for private interests are necessarily interwoven with public interests. (*State* v. *City of Elizabeth*, 54 N. J. L. 462.) The size of building lots as influencing the readiness of their sale is a proper factor to be taken into consideration in the vacation of streets as well as in the laying out or altering thereof.

Nothing is shown on the face of the proceedings vacating the streets and alleys in question that would in any way indicate that the public authorities were actuated by improper motives or were acting solely on behalf of private interests, as contended by counsel for appellants. On the contrary, the vacation ordinance, among other things, stated that the streets and alleys were vacated and closed "inasmuch as the same are no longer required by the general public as streets and alleys and the public interest will be subserved by such vacation." Even if the parol evidence were admissible, we find nothing in this entire record to

indicate that the city council was not exercising an honest judgment, believing that the public interests would be subserved by such vacation ordinance, even though incidental benefits were received by appellees.

Counsel for appellants cite and rely strongly, among other cases, upon *Ligare* v. *City of Chicago*, 139 Ill. 46. Bearing in mind the reasoning of this court in *Ligare* v. *Chicago, Madison and Northern Railroad Co.* 166 Ill. 249, and the facts in these and other cases cited and relied on by counsel for appellants, nothing is said in any of them that in any way conflicts with the conclusion we have reached that the vacation ordinance was not void as against public interests.

Counsel for the appellants further insist that the court erred in not protecting by a writ of injunction, as prayed in said bill, the special or private rights of appellants to their easement in the streets and alleys in question. The authorities are not in harmony as to the rights of adjoining property owners in public streets and alleys. (2 Elliott on Roads and Streets,—3d ed.—sec. 1180; 14 Cyc. 1182.) A full conception of such rights and the rights and interests of the public in the streets and alleys of the city "has been slowly evolved from experience. It has been only at a recent period in our legal history that these two distinct rights have, separately and in their relations to each other, come to be understood and defined with precision." (3 Dillon on Mun. Corp. sec. 1123.) By some authorities it is held that property owners whose lands do not abut upon the portion of the street vacated are not entitled to recover damages for such vacation, while in others it is held that any property owner who receives a special injury because of such vacation may recover damages to his property even though not abutting upon the street vacated. (3 McQuillin on Mun. Corp. sec. 1408; 3 Dillon on Mun. Corp.—5th ed.—sec. 1160.) "There is an essential and an inherent difference between the private proprietary rights

of the abutting owner and the rights of the public as represented by the municipality. The municipal authorities cannot transfer rights which the municipality does not possess, and the easement of access is a private right entirely distinct from that of the public. As the easement of access is a private right, it remains in the owner and does not pass under a grant of the right of occupancy made by the municipal corporation." (2 Elliott on Roads and Streets, —3d ed.—sec. 891.)

Counsel in their brief have cited numerous authorities from other jurisdictions bearing on this question. As there is a conflict in these authorities it will serve no useful purpose to attempt to discuss or review them. This court has heretofore been called upon to consider the principles of law here under consideration. A reference to such decisions will indicate that they are in harmony with the weight of authority in other jurisdictions.

Perhaps the leading authority in this State on this question is *City of Chicago* v. *Union Building Ass'n*, 102 Ill. 379. It was there said that the rule was well settled that as to any obstruction to the streets not resulting in special injury to the individual only the public could complain, but where such obstruction not only injured the public but at the same time specially injured the individual, the latter could maintain an action and recover for his special injury. In considering what was a special injury the court quoted with approval the following (p. 393): "First, for any act obstructing a public and common right no private action will lie for damages of the same kind as those sustained by the general public although in a much greater degree than any other person; second, an action will lie for peculiar damages of a different kind though even in the smallest degree; third, the damages, if really peculiar, need not always be direct and immediate, like the loss of a horse, but may be as remote and consequential as in other cases of tort; fourth, the fact that many others sustain an injury

of exactly like kind is not a bar to individual actions of many cases of a public nuisance." Again, on page 397, the court said: "Property holders bordering upon streets have, as an incident to their ownership of such property, a right of access by way of the streets which cannot be taken away or materially impaired by the city without incurring legal liability to the extent of the damages thereby occasioned, and to this extent, perhaps, it may be said there is a special trust in favor of adjoining property holders. But in no other respect do the property owners or citizens of the municipality have a right in the street other or different than that of the public generally."

In *Saunders* v. *City of Chicago,* 212 Ill. 206, the court again considered this question and reviewed certain of the authorities, and said (p. 216): "The private rights which are protected by this statute [section 1 of chapter 145] are only such as are other and different from that of other lot owners. [Citing authorities.] If the vacation of a street by a city council closes a street adjacent to the property of a citizen or one that directly affords access thereto or egress therefrom, it is then regarded that the property of such citizen has been damaged for a public use and that he is entitled to be paid therefor. But if his injury is no different or greater than that of the public it is *damnum absque injuria,* the maintenance or vacation of the street being a question which the municipality may, as the representative of the public, determine in view of what is regarded to be the general interest of the public."

It is sometimes stated that the test is not whether the property abuts but whether there is a special injury, and it is ordinarily held that the private right of access is the right not only to go from one's property to the street and from the street to the property, but also to use the street in either direction as an outlet; that this right extends at least to the next intersecting street. (1 Lewis on Eminent Domain,—3d ed.—sec. 191; 3 Dillon on Mun. Corp.—

sec. 1160; 2 Elliott on Roads and Streets,—3d ed.—sec.
1181.) In an early leading case in Massachusetts it was
held that there could be no recovery if the property owner
was not specially injured, and the property owner could
not recover if his access was cut off only in one direction.
*Smith* v. *Boston,* 7 Cush. 254.

In the recent case of *Illinois Malleable Iron Co.* v. *Park
Comrs.* 263 Ill. 446, this court re-affirmed the rule hereto-
fore stated, that the owners of property bordering upon a
street have a right of access to the street which cannot be
taken away or materially impaired without compensation,
and held that the weight of authority supported the doc-
trine that owners of land abutting upon neighboring streets,
or upon other streets or other parts of the same street, at
least beyond the next cross-street, were not entitled to dam-
ages notwithstanding the value of their lands might be les-
sened by the vacation or discontinuance of the street, and
said (p. 452) : "The inconvenience sustained by him in
going from the street in front of his premises to a particu-
lar part of the city on account of the closing of the street
differed in degree, only, and not in kind, from that sus-
tained by all other persons having occasion to go that way."
This court, however, does not hold, as have some authori-
ties, that the property must be immediately abutting in or-
der that the property owner sustain peculiar damages, as
in *City of Chicago* v. *Burcky,* 158 Ill. 103, it was held that
the vacation of a part of a street constituting a thorough-
fare across railroad tracks and the erection of a viaduct in
another place caused a special damage to the land owner,
whose property was thereby left upon a blind court, in a
manner different from the general public, and entitled him
to damages although his property only touched the vacated
portion at one corner.

The cases already referred to cite and construe all the
leading authorities in this State on this question. We deem
it unnecessary to further lengthen this opinion by referring

specifically to many other cases cited in the briefs on this special point. Beyond question, under these authorities, if the appellants' property has incurred a special and peculiar damage of a different kind from that of the general public, it is clear that they are entitled to recover therefor. It seems quite clear, also, that under the authorities in this State appellants cannot recover damages for the vacation of any of the streets or alleys in any part of said Hitch's Fairview subdivision unless as to the vacated alleys in the block in which appellants' property is located. The fact that appellant Hill was responsible for vacating a part of the alley between his own lots prior to the vacation now in question might have some bearing in considering the amount of damage, if any, done to his lots by this vacation.

If it be assumed that the evidence shows that appellants were damaged by the vacation of the alleys immediately abutting upon their property, are they entitled to injunctive relief in this case? The authorities are generally to the effect that where there is an adequate remedy at law and the proceedings to vacate the street or alley have been regular, injunction will not lie. "When the proceedings to vacate are void for want of statutory authority * * * or for any other reason, equity will enjoin the closure or obstruction of the street at the suit of one who would be specially damaged thereby. If the act provides for compensation and the proceedings are regular, injunction will not lie." 1 Lewis on Eminent Domain, sec. 212. See, also, to the same effect, 3 McQuillin on Mun. Corp. sec. 1413, and 2 Elliott on Roads and Streets, (3d ed.) sec. 1194.

Counsel for appellants insist that no case has ever arisen in this State bearing directly on the question of injunctive relief to property owners abutting upon a vacated street or alley. It is true that in none of the authorities cited by counsel on either side in their exhaustive briefs was this question raised by a property owner so situated, but the general principles involved as to whether a person is en-

titled to injunctive relief have been discussed in various decisions in this State. In *Meyer* v. *Village of Teutopolis, supra,* a street in that village had been regularly vacated by ordinance, and the court stated that if any private rights had been injuriously affected by such vacation common justice would dictate that compensation should be made to the parties injured, but that such right was fully protected by the provisions of chapter 145 of the Revised Statutes.

In *Parker* v. *Catholic Bishop, supra,* the court discussed at length the principles here under consideration, stating that while the vacation of the alley might deprive the complainant in that case of a valuable property right which she would otherwise enjoy as appurtenant to her land, yet if said alley were vacated for public use and her property be thus damaged she would be entitled to compensation, and the opinion continued (p. 165) : "It seems to be well settled in this State that where no part of the land or property of the complaining owner is physically taken for or in making the proposed public improvement, and the damages claimed to result are therefore consequential, only, this provision of the constitution does not require the ascertainment and payment of such damages as a condition precedent to the exercise of the right or power. .[Citing authorities.] It seems to be sufficient to answer the constitutional requirement that a remedy is provided for the recovery of such damages." In answer to the argument that the city council, under said chapter 145 of the Revised Statutes, should have ascertained and paid the damages resulting from the vacation as a condition precedent to such vacation, it was held that the discretion was vested in the municipal authorities to decide first whether the property would be damaged by the proposed vacation; that if, in the exercise of a reasonable discretion, it was found to be damaged they could ascertain the damages under said chapter 145, but if they determined that no injury would inure to the property by the proposed action, the municipal authorities, in their

discretion, could pass an ordinance to vacate or close the street or alley; that any other construction of the statute would require the summoning into court of every person whose property may be injured by the proposed vacation; that the presumption was that the city council would discharge its duties as required by law and ascertain and pay damages for any proposed vacation; that (p. 167) "this presumption will obtain until the property owner has in an appropriate action established his right to damages, and the property owner will, where no proceedings have been instituted by the municipality to ascertain his damages, be remitted to his remedy at law for recovery of the same. The determination of the city authorities cannot, however, be conclusive upon the property owner. He will be entitled to his day in court, to recover, in an appropriate action at law, all such special damages to his property, as contradistinguished from damages he suffers in common with the public, as will be occasioned by the proposed vacation."

The rule as thus laid down has been repeatedly sanctioned by this court. In *County of Mercer* v. *Wolff*, 237 Ill. 74, the court said (p. 76) : "But when no part of the land of an abutting owner is taken, the constitution does not require the ascertainment and payment of his consequential damages before entry can be made upon adjoining property. Damages resulting to an abutting proprietor, no part of whose land is physically taken, are not within the contemplation of the Eminent Domain act but he is remitted to his action at law for his damages,"—citing *Parker* · v. *Catholic Bishop, supra,* and other cases. In *Murphy* v. *Chicago, Rock Island and Pacific Railway Co.* 247 Ill. 614, where streets and alleys had been vacated by the public authorities of Joliet in order to require certain railroad tracks to be elevated, and the evidence tended to show that the complainants would be greatly inconvenienced in access to their property and their business thereby damaged and property greatly depreciated, the court said (p. 618) : "These

circumstances, alone, do not even tend to show that the ordinance is unreasonable. Such consequences not infrequently result to some property from the elevation of railroad tracks, the building of viaducts and the making of other public improvements, but the improvements are not to be suspended on that account at the instance of the owner of the property affected. If damages result of such a character that he is entitled to compensation he may recover such damages, but he cannot call upon a court of equity to stop the improvement." In *People* v. *Wieboldt, supra,* the court reached the same conclusion as to the power of the municipal authorities to vacate a street or alley. In Lewis on Eminent Domain, (3d ed.) sec. 212, note 73; 2 Elliott on Roads and Streets, (3d ed.) sec. 1194, note 101; 3 McQuillin on Mun. Corp. sec. 1413, note 91; and 3 Dillon on Mun. Corp. (5th ed.) sec. 1160, p. 1844, note 1, all of these learned authors have construed the rule laid down in *Parker* v. *Catholic Bishop, supra,* and like decisions, as denying in this State the right to relief by injunction for such damages as are here alleged to have been incurred by appellants, because there was an adequate remedy at law under said chapter 145 of the Revised Statutes.

Obviously, under all decisions in this State, property may be so specially and peculiarly injured, even though not immediately abutting upon the vacated street or alley, that damages can be recovered from the municipality for such vacation, and the damage to injured property so situated would differ in degree, and not in kind, from the damages incurred by property immediately abutting upon such vacated street or alley. It would be most illogical to hold that the property owner would be entitled to injunctive relief for indirect or consequential damages, when none of his property had been taken, because his property immediately abutted upon the street or alley vacated, while another property owner who was also especially or peculiarly injured by having access to his property cut off

by the closing of said street or alley would not be entitled to injunctive relief but must be remitted to his remedy at law to recover such damages. This court has never laid down any such rule.

Many cases have been cited by counsel for appellants in which they argue that in circumstances such as these, the owners were held entitled to relief by injunction. In most, if not all, of them no attempt was made by the public authorities to vacate a street or alley or other public property. In many of them there was an attempt to obstruct public property, such as a street or alley, or divert it to an improper use. Thus, in the case of *Newell* v. *Sass,* 142 Ill. 104, there was an attempt by an abutting property owner to obstruct and close an alley. The same was true in *Smith* v. *Young,* 160 Ill. 163, and in *Feitler* v. *Dobbins,* 263 id. 78. In *Village of Princeville* v. *Auten,* 77 Ill. 325, there was no question of vacation, but a bill was filed to enjoin the village from putting up a building on land which had been dedicated as a public square. Substantially the same was true in *Village of Riverside* v. *MacLain,* 210 Ill. 308, *City of Chicago* v. *Ward,* 169 id. 392, and *South Park Comrs.* v. *Ward & Co.* 248 id. 299. In several other cases cited by counsel for the appellants, parties who had platted property under the provisions of chapter 109, (Hurd's Stat. 1913, p. 1854,) after having sold and conveyed certain lots under said plat, were attempting under that statute to vacate the plat. This court has repeatedly held that this could not be done to the injury of any person who had purchased from the original dedicator or his grantees, but in those cases there was no attempt by the public authorities to vacate the streets or alleys. Among this class of cases are *Earll* v. *City of Chicago,* 136 Ill. 277, *Corning & Co.* v. *Woolner,* 206 id. 190, and *Stevenson* v. *Lewis,* 244 id. 147. The distinction between such cases and the class to which the one here under consideration belongs is clearly pointed out by this court in *Saunders* v. *City of Chicago,*

*supra,* where it was said (p. 217) : "The municipality represents the citizen so far as his general interests are concerned and acts for and binds him, and he must submit to what is deemed the most beneficial to the general public. But this principle is not involved in the construction of the statute relating to the vacation of the streets of a city or village by the proprietor of a plat. He is acting in his individual right, and not as the representative of the owners of lots whose interests are to be affected by his acts." Under said chapter 109 this court has more than once held that all or part of a plat may be vacated provided such vacation will not abridge or destroy the rights or privileges of other proprietors therein, but that such vacation could only be made by the joint action of the proprietor and all the owners of lots in the plat that would be affected thereby. *Saunders* v. *City of Chicago, supra; Village of Lee* v. *Harris,* 206 Ill. 428; *Heppes Co.* v. *City of Chicago,* 260 id. 506; *Moore* v. *City of Chicago,* 261 id. 56.

For the reason that this vacation ordinance was legally passed and was authorized under the statute and that the remedy under said statute by an action for damages is adequate, the court rightly refused the relief prayed for in the bill and dismissed it for want of equity.

The rights that the appellants had, under their deed, in these streets and alleys before they were vacated were the rights of access. It would have been different if the streets and alleys had been laid out under a common law and not a statutory dedication. The difference between a statutory and common law dedication is, that the one vests the legal title to the ground set apart for public purposes in the municipal corporation in trust for the public, while the other leaves the legal title in the original owner, charged, however, with the same rights and interests in the public which it would have if the fee were in the corporation. (*Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet,* 79 Ill. 25; *St. John* v. *Quitzow,* 72 id. 334.) Where the

law vests the fee of a street in the city, as under a statutory plat, if vacated by the public authorities said fee reverts to the dedicator, his heirs or assigns. It does not pass to the abutting lot owner or his grantees. Neither the State legislature nor the city can divest him of such title. (*Gebhardt* v. *Reeves,* 75 Ill. 301; *Helm* v. *Webster,* 85 id. 116; *Village of Hyde Park* v. *Borden,* 94 id. 26.) But a common law dedication of a street or alley vests in the city the title, only, of an easement, and when the easement is abandoned, the title, with all its incidents, becomes perfect in the adjacent lot owner or owners. (*Sullivan* v. *Atchison, Topeka and Santa Fe Railway Co.* 251 Ill. 108.) Appellants took their rights in the streets and alleys under a statutory dedication, and therefore, when the alleys were legally vacated, the title to the land composing them reverted to the dedicator's grantee and not to the abutting property owners.

Even if it were assumed that this case belonged to that class of cases where injunctive relief is proper, there is another reason why such relief should not be allowed. In cases where mandatory injunctions are asked for, "it is the duty of the court to consider the inconvenience and damage that will result to the defendant as well as the benefit to accrue to the complainant by the granting of the writ, and where the defendant's damages and injuries will be greater by granting the writ than will be the complainant's benefit by granting the writ, or greater than will be complainant's damages by the refusal of it, the court will, in the exercise of a sound discretion, refuse the writ." (*Lloyd* v. *Catlin Coal Co.* 210 Ill. 460; *Dunn* v. *Youmans,* 224 id. 34; 1 High on Injunctions,—4th ed.—sec. 2, and cases cited.) It is not every case of a permanent obstruction in the use of an easement that entitles the aggrieved party to a restoration of the former situation. Each case depends on its own circumstances. The courts, in the exercise of a sound discretion, must determine in such instances whether

a mandatory injunction shall issue. (*Starkie v. Richmond,* 155 Mass. 188.) The facts, as shown on this record, bring this case clearly within the reasoning of these authorities.

Whether, as earnestly contended by counsel for appellees, the appellants are estopped from having any relief in equity by their *laches* we do not find it necessary to decide.

For the reasons already stated, the decree of the circuit court must be affirmed.                          *Decree affirmed.*