(No. 31342.—Cause transferred.)

JOHN T. CLARK *et al.,* Appellants, *vs.* LINDSAY LIGHT & CHEMICAL COMPANY, Appellee.

*Opinion filed January 18, 1950.*

CAMPBELL, CLITHERO & FISCHER, of Chicago, (DELBERT A. CLITHERO, of counsel,) for appellants.

WINSTON, STRAWN, SHAW & BLACK, of Chicago, and CHARLES W. HADLEY, of Wheaton, (JOHN C. SLADE, DOUGLAS C. MOIR, and EDWARD J. WENDROW, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellants, John T. Clark and Nan Price Clark, filed a complaint in the circuit court of Du Page County seeking to permanently enjoin appellee, Lindsay Light & Chemical Company, a corporation, from polluting a stream which flows through appellants' farm. The record shows that appellee drained its liquid refuse of water and chemicals into a large sump constructed on its premises. The sump had no outlet and the plan was that refuse pumped into it would be absorbed by the surrounding earth. Two hundred feet from the sump was a storm sewer which had been built and was maintained by the city of West Chicago. Chemical seepage from the sump found its way into the sewer, and from there into the stream which flowed through appellants' land. While this injunction proceeding was pending, appellee constructed a sunken concrete restraining wall between the sump and the sewer in an effort to prevent further seepage and the ultimate pollution of the stream into which the sewer drained.

The master, to whom the cause was referred, found that the West Chicago storm sewer was an intervening cause of pollution; that the concrete wall had stopped the pollution; and recommended that the suit be dismissed at appellants' costs. Exceptions were taken to the report and, after argument, the cause was again referred to the master. The latter died, however, before proceeding further. At this point in the proceeding, appellants, who had owned 200 acres of farm land adjacent to the stream when they filed their complaint on June 30, 1945, sold 139 acres thereof to a Dr. Smith, at full market value. The remaining 61 acres were leased to him by appellants. A

special master was appointed and, after taking evidence, found that while the pollution was continuing, its effect on appellants was inconsequential as compared to the effect of granting an injunction against appellee. He concluded that under the doctrine of "balancing of conveniences" or "weighing of the equities," a court of equity was not warranted in issuing an injunction, and recommended the cause be dismissed for want of equity. After overruling objections to the report, the chancellor dismissed the complaint as recommended. Appellants prosecute a direct appeal to this court on the assumption that a freehold is involved.

In asserting that the pollution of a stream involves a freehold, appellants depend largely on the fact that this court took jurisdiction of direct appeals in two other cases involving an action by a riparian owner to enjoin stream pollution. They are *City of Kewanee v. Otley*, 204 Ill. 402, and *Barrington Hills Country Club v. Village of Barrington*, 357 Ill. 11. We note that the question of jurisdiction was not raised or discussed in either case. A reading of the *Barrington case* indicates that the pleadings put in issue the constitutionality of a statute there involved, and it might well have been that we accepted jurisdiction on that ground. In the *Kewanee case* it is apparent that the court chose to treat the waters of a stream as a freehold, for in concluding it said, at page 417: "The right to a stream of water is as sacred as a right to the soil over which it flows. It is a part of the freehold, of which the owner cannot be disseized except by due process of law, and the pollution of a stream constitutes the taking of property, which may not be done without compensation. *Gardner v. Newberg*, 2 Johns. Ch. 161; *Simons v. Patterson*, 48 L.R.A. 717." While such may have been the law in the jurisdiction of the cases cited, we are of the opinion that the foregoing statement in the *Kewanee case* overlooked the established law of Illinois and many other jurisdictions, that there can be no property merely in the water of a running natural stream. This

principle was established in the early cases of *Evans* v. *Merriweather,* 3 Scam. 492; *Plumleigh* v. *Dawson,* 1 Gilm. 544; *Canal Trustees* v. *Havens,* 11 Ill. 554; *Batavia Mfg. Co.* v. *Newton Wagon Co.* 91 Ill. 230, and *Druley* v. *Adam,* 102 Ill. 177.) These cases further held that the riparian owner has but a usufruct in the water while it passes, *i.e.,* that he has, as an incident to his ownership of land, a property right in the flow. of the water at that place for all beneficial uses that may result from it. Similar incidents of ownership, or natural rights as they are sometimes termed, are had to light and air above the land. In discussing riparian ownership of water, a recent compilation sums up the rule as follows: "In any case, the waters of a natural stream or other body, owing to the peculiar character thereof, are not susceptible of absolute ownership as specific, tangible property * * * the proprietary right thereto or interest therein being usufructuary in character." (56 Am. Jur. p. 699.) Black's Law Dictionary, 3rd ed. p. 1790, defines "usufruct" as "the right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility, and advantage which it may produce, provided it be without altering the substance of the thing."

While we agree with appellants that the natural right to use the water of a stream is one that cannot be taken without due process of law, we conclude that such right is but an incident of ownership, and not a portion of the land or freehold itself. We cannot say that the flowing waters of the stream in question were a part of appellants' freehold, any more than they were a portion of the freehold of riparian owners above or below them. This being so, a cause of action to enjoin the pollution of a stream does not, *per se,* involve a freehold as appellants contend. For this court to entertain jurisdiction on direct appeal, on the ground that a freehold is involved, the freehold must be directly, and not collaterally, contingently or inci-

dentally involved. (*Hachadourian* v. *Bogosian*, 393 Ill. 135; *Cohen* v. *Oguss*, 384 Ill. 353.) Again, to give this court jurisdiction on the theory that a freehold is involved, the necessary result of the judgment must be that one party gains and the other loses a freehold estate, or the title to a freehold must be so put in issue that the determination of the cause necessarily requires a decision with respect to the ownership of the real estate in controversy. (*Horner* v. *County of Winnebago*, 396 Ill. 382; *Carlson* v. *Chicago Title and Trust Co.*, 375 Ill. 125.) The decree of the trial court here does not produce such a result, but rather only denies appellants equitable relief against the acts complained of. A freehold was not involved in the trial court and is not involved in this court.

The cause is transferred to the Appellate Court for the Second District.

*Cause transferred.*