# Frederick C. Aldrich et al., Appellants, v. R. J. Ederer Company, Appellee.

## Gen. No. 25,501.

1. LANDLORD AND TENANT, § 331*—*when equity will not preserve lien.* A court of equity will not intervene to preserve a lien of a lessor upon money awarded as compensation to the lessees for a portion of the leased premises taken under condemnation proceedings, where it appears that there is no breach of the covenants of the lease, no insolvency of the lessee or prospect of the same, no attempt to foreclose the equitable lien or ground therefor; no diminutions of the security but on the contrary probability of its enhancement in value.

2. EQUITY, § 1*—*when equity will not intervene.* Equity will not exercise its extraordinary jurisdiction when it will operate inequitably and oppressively.

3. RECEIVERS, § 4*—*when receiver will not be appointed to preserve fund.* Where a tenant has the legal right to a fund awarded as compensation for a portion of leased premises taken under condemnation proceedings, and will not receive its full rights under such proceedings until it has possession of the fund with the attendant right to use the same as it sees fit, and its damages from the deprivation of such right are greater than any which may result to the lessor by refusal of the prayer of a bill to have a receiver appointed for such fund, the bill will be dismissed for want of equity.

Appeal from the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Affirmed. Opinion filed December 31, 1920.

MOSES, ROSENTHAL & KENNEDY and I. B. LIPSON, for appellants; S. SIDNEY STEIN, I. B. LIPSON and HENRY JACKSON DARBY, of counsel.

CUSTER & CAMERON and GEORGE A. MASON, for appellee.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

This appeal is from the dismissal of the bill of complaint in the cause for want of equity. Its primary object is to preserve an equitable lien claimed by appellants, the complainants, upon money awarded as compensation to appellee, R. J. Ederer Company, a corporation, a defendant to the bill, for a portion of premises taken under condemnation proceedings on the petition of the City of Chicago for the purpose of widening Michigan boulevard.

Said Ederer Company holds the premises in question under a lease from Mary O'Newell for a term of 99 years, beginning April 1, 1906, and ending March 31, 2005, at an annual rental of $6,300, and appellant, Frederick C. Aldrich, trustee, has succeeded to her interests and holds the same in trust for the other complainants to the bill.

The demised premises had a frontage of 79½ feet on the east side of said Michigan boulevard and a depth of 124 feet. The entire lot was covered by a 4-story brick building occupied by the tenant. The west 61.50 feet, nearly one-half of the lot and building, were taken by the condemnation proceedings. The compensation awarded for damages for all interests was $142,880, and on proper issues taken and hearing to determine the distributive shares of said fund, the sum of $139,795.61 was awarded to the tenant, said Ederer Company, and $3,084.39 to said Aldrich, trustee. An assessment against the property not taken was fixed at $14,324, and after that amount with interest thereon was deducted from the amount of the total compensation, the balance, $128,502.15, was deposited with the county treasurer in payment of the judgment in the condemnation proceedings. On application of Aldrich, trustee, his distributive share was paid, and on the filing of this bill a temporary injunction was granted against payment to said Ederer Company of its share of the award in the county treasurer's hands, amounting to $125,417.76.

Later, by consent of the parties, said fund was deposited with the Northern Trust Company to abide the result of this suit.

Among other things covenanted and agreed to in the 99-year lease between the parties thereto is that the rent reserved, taxes, assessments, water rates, insurance, etc., "shall be, and they are hereby declared to be a valid and first lien upon any and all buildings that may be erected or placed on the said premises, and upon the interest of the lessee and its assigns in this lease and the premises hereby demised."

The theory of the bill is that the compensation so awarded to the tenant is a money substitution for the part of the land and building taken, to which, as a part of the tenant's interest in the lease, an equitable lien attached by virtue of said covenant, and if the award were paid to the lessee the lessor's security would be *pro tanto* reduced, and that therefore appellant Aldrich, trustee, standing in the lessor's shoes, is entitled to the aid of a court of equity to preserve the lien that otherwise may be lost.

After setting forth, in substance, the above stated facts and the provisions of the lease, including the one above referred to, and other matters that need not be specifically referred to, the bill alleges as material grounds for relief that the value of the land not taken will be fluctuating and uncertain during the unexpired term of the lease, that the portion not taken will be worth less than the entire lot, that the building on the premises will be so destroyed as to render it practically valueless, and if repaired by the tenant its value will be less than half that of the present building; that the financial ability of the tenant to comply with the covenants of the lease may be reduced or entirely destroyed by changes in market and business conditions affecting property values, etc., during the long unexpired term of the lease, so that the lessee may be unable to comply with the covenants

and agreements of the lease; that if the award to said tenant is paid to it the security remaining to complainants will be lessened and impaired and insufficient for the payment of rentals and other moneys to become due under the lease, or for a breach thereof, even though defendant may erect a new building upon the premises and fully pay for the same; that the fund should be impounded and sequestered and held in trust in favor of said Aldrich, trustee, subject to an equitable lien in his favor, "and a trustee, receiver, sequestrator or depositary" should be appointed by the court with directions to invest said sum from time to time and pay the issues, interest and profits thereof to said Aldrich, trustee, as required from time to time to satisfy all sums which may become payable by the lessee under the terms of the lease, paying the overplus, if any, to said lessee, its assigns, etc., and that said sums shall be held as security for the payment of the rentals and other sums which may become due from time to time under said lease, and that in the event of its termination by breach thereof that the unexpended portion of said sum shall revert to said Aldrich as trustee. The prayer for relief asks for the appointment of a receiver or trustee under such directions and with such powers.

The answer denies the equities of the bill, admits the facts stated with regard to the condemnation proceedings, the existence and terms of the lease, that the lessee's obligations thereunder continue without abatement therefrom by reason of the condemnation, and that the portion of the premises not taken is susceptible of occupation under the terms of the lease. It also sets forth facts tending to show the substantial character of defendant's business, that the effect of the condemnation is to enhance the value of the premises not taken, and not to diminish the security under the lease, and that the tenant purposes to remodel and repair the portion of the building left, as

early as possible, at a probable cost of $50,000, which it is able to meet. It is also pleaded as a defense that the fund is not impressed with a trust, and that the division of the award in the condemnation proceedings was a final adjudication of complainants' claim to a lien upon the fund, and that complainants were estopped from asserting any further claim to the fund by accepting payment of their share of the award.

The main issues of fact in controversy were as to the value of the lessor's security both before and after the condemnation proceedings. Evidence was introduced touching these matters, and also the financial responsibility of the tenant as bearing upon its equities in the case. It was shown that the average gross annual business conducted by the Ederer Company for the past 5 years exceeded a half million dollars, that it has tangible assets of $700,000 in value over and above its good will and obligations, that it is practically free from debt, that its business is of a stable, growing character, that it is amply able to fulfil its covenants under the lease, and in all probability will continue to be..

The evidence also tended strongly to show that not only is complainants' security, so far as the value of the premises not taken is concerned, greater than at the time the lease was entered into, but the value thereof will greatly increase from year to year for many years to come.

So far, therefore, as complainants' right to relief rests upon the claim that the value of their security has diminished as a result of the condemnation proceedings, the evidence does not support it. The facts present no danger of loss or deterioration of the security from any of the grounds which usually form the basis of equitable intervention such as neglect, waste, misconduct or insolvency of the tenant. As stated by Mr. Pomeroy:

"The element of danger is an important considera-
tion; a remote or past danger will not suffice as a
ground for the relief, but there must be a well
grounded apprehension of immediate injury. Nor will
the court act upon a possible danger only; the danger
must be great and imminent and demanding immedi-
ate relief." (Pom. Eq. Jur. [4th Ed.], sec. 1485;
High on Receivers [4th Ed.], sec. 11.)

It is the very gist of complainants' bill that it seeks
the protective arm of a court of equity merely to
preserve an alleged lien on the fund in question
against possible contingencies, on the happening of
which the lessor's security or the lessee's ability to
comply with the covenants of the lease at some future
period before it expires may be diminished, and to
that end to have the fund held in the hands of a re-
ceiver or trustee and administered by a court in chan-
cery for the next 85 years. Counsel for the Ederer
Company contend that the primary object of the bill,
as thus revealed, is in effect the appointment of a
receiver alone, for which a bill cannot be maintained.
(Story's Eq. Jur. [14th Ed.], sec. 1170; 14 Cyc. p. 29.)
But complainants assert that its primary object is to
preserve their equitable lien, and that the appointment
of a receiver or trustee or depositary is only the means
to such an end. Practically the only equitable ground
upon which complainants stand is that they will lose
their lien unless it is in some way preserved. But
where, as in the instant case, it appears that there
is no breach of the covenants of the lease, no insol-
vency of the lessor or prospect of the same, no attempt
to foreclose the equitable lien or ground therefor, no
diminution of the security but, on the contrary, prob-
ability of its enhancement in value, and that there
will be no necessity or occasion of resorting to addi-
tional security, except on the happening of mere
possible conditions, of which there are now no reason-
able indications, we think a court of equity will not

intervene to preserve a lien under such a state of facts. It would be an extraordinary exercise of the court's power to appoint a receiver for the purpose of administering the fund under such circumstances, and justifies the criticism that such appointment is in effect the primary object of the bill.

Nor, if an equitable lien exists, is any trust involved by reason thereof (5 Pom. Eq. Jur. [4th Ed.], sec. 1334), so that whatever name be given to the agent the court might appoint to hold, invest and apply the fund for the remaining years of the lease, as contemplated by the bill, his function would be merely that of a receiver.

But assuming the existence of such a lien and the abstract right to preserve the same, and the necessity for that purpose of resorting to a court of equity, "it is a general rule of equity not to exercise its extraordinary jurisdiction when it will operate inequitably or oppressively." (5 Pom. Eq. Jur. [3rd Ed.], sec. 500.) The application of the principle to the case at bar is pertinently stated in Story's Eq. Jur. Vol. 2 (14th Ed.), sec. 1153.

"But it is not infrequent for a bill *quia timet* to ask for the appointment of a receiver against a party who is rightfully in possession, or who is entitled to the possession of the fund, or who has an interest in its due administration. In such cases courts of equity will pay a just respect to such legal and equitable rights and interests of the possessor of the fund, and will not withdraw it from him by the appointment of a receiver, unless the facts averred and established in proof show that there has been an abuse or is danger of abuse on his own part. For the rule of such courts is not to displace a bona fide possessor from any of the just rights attached to his title, unless there be some equitable ground for interference."

The same principle is recognized in *Lloyd v. Catlin Coal Co.*, 210 Ill. 460, where the court, speaking of the issuance of injunction writs, said:

"It is the duty of the court to consider the inconvenience and damage that will result to the defendant as well as the benefit to accrue to the complainant by the granting of the writ, and where the defendant's damages and injuries will be greater by granting the writ than will be the complainant's benefit by granting the writ, or greater than will be complainant's damages by the refusal of it, the court will, in the exercise of a sound discretion, refuse the writ."

In applying this principle to the instant case, it would seem that the only benefit to accrue to complainants is the preservation of the fund for the enforcement of its lien in case the exigency therefor arises, and if the prayer of the bill is not granted it will lose such lien. On the other hand, if the prayer be granted, the tenant, which has lost one-half of the premises for which it will still have to pay rent under the lease, and which to avail itself of the portion left must remodel the building at an expenditure of nearly one-half the compensation awarded to it, and which has been adjudicated to be the principal sufferer by reason of the condemnation, and entitled to the fund in question as just compensation for its damages, will be deprived of the possession and use of that which the law has given as a substitute for what was taken from it, and thus, in a measure, of the compensation the law contemplates it shall receive and enjoy as the result of the condemnation. Instead of being permitted to have possession of that for the use of which it continues to pay rent, the tenant, regardless of its proven ability to fulfil every obligation under the lease, would be restricted to only such interest from the fund as a depositary may obtain, which, in the ordinary course of affairs we must presume is much less than could be obtained by the tenant's own use of the fund, especially in a business as successfully conducted as the tenant's. Legal interest alone on such fund would more than pay the rental of the premises.

As, therefore, the tenant has the legal title to a fund that is not impressed with a trust, and will not, in our judgment, receive its full rights under the condemnation proceedings until it has possession thereof with the attendant right to use the same as it sees fit, and as the damages and injuries from the deprivation of such right to use the fund are apparently greater under the circumstance of the case than any damage that may result to complainants by refusal of the prayer of the bill, and as complainants' damages are entirely speculative, we think the bill was properly dismissed for want of equity.

In this view of the case we need not discuss the questions of *res judicata* and estoppel upon which the court below predicated its action.. The decree will be affirmed.

*Affirmed.*

GRIDLEY and MATCHETT, JJ., concur.