(No. 19356.-)
CARLISLE DRUCE *et al.* Defendants in Error, *vs.*
M. BLANCHARD *et al.* Plaintiffs in Error.

*Opinion filed February 21, 1930.*

A. M. McConoughey, for plaintiffs in error.

Martin C. Decker, for defendants in error.

Mr. Commissioner Edmunds reported this opinion:

Defendants in error, who were complainants below, filed in the circuit court of Lake county a bill praying that plaintiffs in error be enjoined from constructing and maintaining across the outlet of Third Lake a dam whereby the water of the lake would be raised twenty-one inches above the level of August 14, 1927, the ground for injunction being that such action would interfere with the drainage of farm lands owned by defendants in error. One of the plaintiffs in error is the individual who undertook by contract to build the proposed dam. The other plaintiffs in error are owners of summer cottages, who claim the right to enjoy such higher level of Third Lake as the proposed dam would bring. A writ of error was sued out to review the decree of permanent injunction which was entered.

The natural lay-out of the drainage system involved may be described briefly as follows: Third Lake (or Chittenden Lake) is a body of water of approximately 160 acres. It has two inlets, one in the shape of a channel about 100 feet long which connects it with Druce Lake, a small body of water to the east, and the other an open ditch, the source of which is about six miles to the south. At the north side of Third Lake is another open ditch, which constitutes its one outlet and extends north for a mile or more to a body of water called Fourth Lake. From Fourth Lake

there is an outlet to the DesPlaines river. The ground to the south of Third Lake is low, flat and marshy. The lands of all of defendants in error but one drain into the ditch entering Third Lake from the south. The lands of the other defendant in error drain into Druce Lake.

It has been established by many decisions, commencing with *Gillham* v. *Madison County Railroad Co.* 49 Ill. 484, that the owner of the dominant heritage has a natural easement over the land of the servient heritage for the flow of surface waters, and the owner of the servient heritage can not interfere with or divert the flow of the water-courses. (*Pinkstaff* v. *Steffy,* 216 Ill. 406; *Broadwell Drainage District* v. *Lawrence,* 231 id. 86; *People* v. *Chicago and Eastern Illinois Railroad Co.* 262 id. 492; *Town of Nameoki* v. *Buenger,* 275 id. 423.) The reason for this rule was fittingly expressed in *Gormley* v. *Sanford,* 52 Ill. 158, as follows: "The right of the owner of the superior heritage to drainage is based simply on the principle that nature has ordained such drainage, and it is but plain and natural justice that the individual ownership arising from social laws should be held in accordance with pre-existing laws and arrangements of nature. As water must flow and some rule in regard to it must be established where land is held under the artificial titles created by human law, there can clearly be no other rule at once so equitable and so easy of application as that which enforces natural laws. There is no surprise or hardship in this, for each successive owner takes with whatever advantages or inconveniences nature has stamped upon his land."

While this principle presumably governs the present case, its application is here made somewhat difficult by reason of the fact that the hand of man had been operating in years previous to the bringing of suit to affect the workings of the above system as it functioned in a state of nature, such operations going so far back and being of such sort as to make it difficult to conclude just how it did work in a natu-

ral state. Granting the general right of defendants in error, as owners of the·dominant heritage, to drainage as it went on in such natural state, the present case must necessarily be settled upon the evidence presented and the rules of law applicable thereto. The variations brought about by man's intervention must be given consideration, and the possibility is presented that the rights of the parties may be governed thereby, altogether irrespective of what the natural conditions were. The problems involved can be best understood through a brief review of the evidence which was introduced. In making such review, in addition to the general lay-out of the system, the following things must be kept in mind: (1) Some time before the year 1900 (the record containing no indication as to exactly when) a saw-mill dam was erected at the end of Fourth Lake, but in 1900 this dam went out and was not replaced; (2) about twenty years before the present suit one of the defendants in error, Carlisle Druce, who owned a tract of land along the outlet from Third Lake to Fourth Lake, used a ditching machine through the slough along said outlet, this work extending, however, only to a point twenty rods from Third·Lake; (3) eight or ten years before the present suit a man who owned the land around the outlet of Third Lake built at that point a crude dam, consisting of railroad ties, logs and rubbish of various kinds, and although a portion of this dam went out, much of it stayed in and was in place on August 14, 1927, and at the time of the present suit. There was some evidence to the effect that about twenty years before the present suit a similar crude dam had been built at the same place but was subsequently destroyed.

Plaintiff in error Murray Blanchard, a civil engineer, who had lived at Druce Lake for seven years and had property fronting thereon, was asked if he had made an examination of the shores of the lake to determine what its normal level was. He testified that he found on Druce Lake a

well-defined gravel and sand beach; that the level proposed
to be made by the twenty-one-inch dam was eight inches
lower than the level thus indicated to be the normal one;
that high water exceeds the normal level of the lake. He
identified a number of photographs taken around Third and
Druce Lakes, stating that the water stage represented there-
in was eight inches higher than the level would be with
the proposed dam. These photographs show some land as
submerged, but Blanchard testified that at the level which
would result from the proposed dam none of the lands of
defendants in error would be covered. On cross-examina-
tion he stated his understanding that lands to be suitable
for farming purposes must be above water and the water
level must be drawn beneath the surface far enough so that
the land has a chance to warm up for cultivation purposes,
and that in the case of summer floods, if the water-table
is two feet beneath the surface of the ground, land will
not overflow nearly as quickly as if the water-table is only
six inches below. On the point of the effect of the ditch-
ing of the outlet from Third Lake to Fourth Lake he tes-
tified that the effect of the ditch would have been to lower
the level of Third Lake as much as it lowered the level of
the standing water in the slough beyond Third Lake and
towards Fourth Lake, and that the original water level was
at least one foot higher than it exists now from the marshes
before the cut was made.

Plaintiff in error Charles F. Smale testified that he had
been familiar with Third and Druce Lakes since 1900 and
owned property on Druce Lake extending 1500 feet into
said lake; that the lands adjacent to the Third Lake out-
let were much dryer than before the ditching between Third
and Fourth Lakes; that after the ditching there was not
as much water in Third Lake in the summer time as before;
that in early years of his observation there were several
boats on the lake, one of them holding eight or ten persons.
On cross-examination he said that there was still boating

on the lake; that during any dry season the water line recedes several feet on practically all the lakes; that with the construction of ditches and tiling of lands a great deal of land in Lake county and in this vicinity that used to be submerged twenty years ago has been reclaimed.

W. E. Pratt testified for plaintiffs in error that he owned sixty acres in the bed of Third Lake and some on the border thereof, had rowed a boat into the flooded lands below Third Lake toward Fourth Lake, and regarded the proposed level a benefit to his property.

William G. Potter, a civil engineer specializing in drainage and sanitary engineering, testified for plaintiffs in error that the effect of draining the marsh lands along the outlet between Third and Fourth Lakes and lowering the water level thereof in any given amount would be to lower the level of Third Lake in substantial proportion. On cross-examination he stated that he was not familiar with the lakes except from seeing them at a distance.

William H. Studer, a civil engineer, testifying for defendants in error, stated that he was born three miles from Third Lake and had been familiar with the vicinity for forty years; that he had made surveys and taken levels therein for the Avon-Freemont Drainage District; that the present crude dam which he found at the outlet of Third Lake had a tendency to raise the water of Third Lake approximately one foot; that a twenty-one-inch dam would partially flood some land for half a mile back; that the proposed dam would raise the present outlet and would retard the water and that it would affect tile drainage for two miles back.

Defendant in error Carlisle Druce testified that he was sixty-three years old and had lived on Third Lake all his life; that the effect of the present crude dam on Third Lake had been to raise the water over some of the low land south of the lake and interfere with the drainage for a couple of miles or so; that twenty years ago he had the ditching work

done through the slough land between Third and Fourth Lakes; that this was done by a ditching machine, which opened up the ditch a little and made it deeper and wider; that no work had been done in this ditch for twenty years; that this work simply gathered the water of the slough so that it could get off better; that he did not know that it affected the level in Third Lake; that he has tile running into Third Lake which does not work properly at the present level; that there is not sufficient fall to the south and west of Third Lake to properly drain the land in that vicinity under present conditions. On cross-examination he testified that the land which he owned had not always been submerged but is now; that the levels of Third and Druce Lakes are practically identical; that he made a small subdivision on the west bank of Third Lake, divided it into lots and sold it to different people, who reside there; that he did not tell any of them they could not use the water of the lake and they always have had free access to it; that for many years people have been coming to the lake for recreation.

Defendant in error Edward J. Druce testified that he owned land south of and under Third Lake; that the inlet ditch from the south runs through his land; that the present crude dam at the outlet of Third Lake holds the water back and affects the drainage; that with the proposed dam in, the lake would not have reservoir enough to hold the water and would overflow the land; that under normal conditions water stands on his land in some places; that raising the water in the lake would raise the water in the ditch back to the land of defendant in error Christensen to the south; that Christensen's drainage is not satisfactory under present conditions and if the level were raised he could not plow the land; that for thirty or forty years no work has been done which would lower the water of Third Lake but work has been done which brought the level higher. On cross-examination he stated that part of his

land was used for picnic purposes and in connection with bathing, boating, fishing and camping; that he had nothing to do with the subdivision; that there are twenty-five summer cottages on the west side of the lake and quite a few scattered ones on the north side.

Defendant in error W. C. Brewer testified that he had lived at Druce Lake all his life; that the effect of the present crude dam at the outlet of Third Lake is to make the land slower draining off; that the effect of the proposed twenty-one-inch dam, or any further obstruction, would be to shut back his drainage and make some of his land so he could not use it. Testifying as to the saw-mill dam at the outlet of Fourth Lake, he said that while it was in "it flooded all of us;" that after it went out, "where we had sloughs and water all summer we are farming it now, raising corn and grain of all kinds." As to the effect of the ditching between Third and Fourth Lakes, he testified that such affected the waters of Druce Lake or Third Lake "not a bit." He further testified that anything that affects the level of Third Lake also affects the level of Druce Lake.

The chancellor made no special finding as to what was the precise natural or normal level of Third and Druce Lakes, and consequently made no special finding as to the net effect thereon, if any, of the saw-mill dam, the ditching between Third and Fourth Lakes, and the crude dam at the outlet of Third Lake, nor did he make any specific finding as to the relationship between the level of August 14, 1927, and such natural level. He did find in connection with the proposed dam "that the construction and maintenance of such dam will seriously obstruct the drainage from the lands of complainants, and will thereby cause said lands to be and remain overflowed at certain times of the year and injure and interfere with the cultivation and use of such lands by complainants." By the decree plaintiffs in error were enjoined "from constructing or maintaining any dam or obstruction on or across the outlet of Third (or

Chittenden) Lake, in Avon township, Lake county, Illinois, in such a manner as to in any way injure or damage the lands of complainants or any of them, or in such a manner as to in any way interfere with the natural drainage of surface water from the lands of complainants and each of them." The finding that the proposed dam would seriously obstruct the drainage of defendants in error is supported by ample evidence that it would constitute an injurious interference with the natural level of the lakes. We cannot set it aside. (*Town of Nameoki* v. *Buenger, supra; Baumgartner* v. *Bradt,* 207 Ill. 345.) The evidence offered affords no substantial support to any theory under which plaintiffs in error might be held to have acquired prescriptive rights to support the building of the proposed dam. It does not support the contention of counsel that plaintiffs in error acquired rights to build the proposed dam out of presumed dedication or through obligations arising out of riparian ownership. Nor does it support the argument that the decree entered will result in interference with rights of a public nature. The decree of injunction was consequently proper.

It is urged that the decree should be reversed because the Public Service Company of Northern Illinois, the Druce Third Lake Improvement Association and W. E. Pratt were not made parties defendant. The Public Service Company of Northern Illinois at the time of suit owned the land where it was proposed to build the twenty-one-inch dam. The Druce Third Lake Improvement Association was at that time a corporation not for profit, organized by property owners in the vicinity. W. E. Pratt was an individual land owner of the vicinity. The record does not show that any of these three had invaded the rights of defendants in error or threatened any action to the injury of defendants in error. In *Zerban* v. *Eidmann,* 258 Ill. 486, appellee was the owner of the servient heritage, and drainage water from appellant's land originally flowed across appellee's

land through ditch "A." Over twenty years before the time of suit ditch "B" had been constructed along the boundary line between appellee and appellant, the result of which was that appellant's drainage no longer went through ditch "A" but was carried off through ditch "B." Appellant then bought a strip of land from one Klingel, a land owner adjoining appellee, through whose holdings ditch "A" also flowed, and constructed thereon a new ditch, "C," running from ditch "B" to ditch "A." By damming up ditch "B" beyond the point where ditch "C" turned off, the water that for twenty years had been passing all the way off through ditch "B" was once more thrown back into ditch "A" and carried along through appellee's land. Appellee sought injunction to compel the filling in of ditch "C" and the removal of the dam in ditch "B." The court held that the right to be free from the flow of surface water could be acquired by prescription and was so acquired in this case. Of appellant's argument that the bill should have been dismissed for want of necessary parties because no decree could be entered requiring Klingel to restore the land to its original condition or as to the other adjoining land owners, the court said: "Appellee in his bill or amended bill did not ask to have the water from appellant's land pass over the land of Klingel into the old ditch, but only sought to prevent appellant from taking the water through the new ditch 'C' into the old ditch 'A' where it crossed appellee's land. Appellee was not in any way claiming that Klingel, Lembke or the other owners that appellant wished to have made parties by his cross-bill were interfering with his rights by turning water into said ditch 'A.' The decree only required appellant to remove the dam in ditch 'B' just to the west of ditch 'C' and to fill up ditch 'C,' and did not attempt to compel any of said other land owners to do anything. These other land owners have invaded no rights of appellee and no relief is asked against them." These observations are applicable to the present case.

It is to be noted, also, that this point of non-joinder was not presented until the case reached this court, and this being so, the situation is further covered by the principle announced in *Gulick* v. *Hamilton,* 287 Ill. 367, where it was pointed out that when raised for the first time on appeal such contention is not favored. The court said also: "If the interest of an omitted party in the subject matter of a suit and the relief sought is so bound up with that of the other parties that his presence is an absolute necessity the court will reverse the decree, not on account of the defendant who makes the objection for the first time on appeal but because no effective decree can be made." The decree entered below enjoins those made parties defendant in the bill from building a dam to interfere with the drainage of the lands of defendants in error. They were the parties, and all the parties there were, to a contract under which the proposed dam was to be built. As the court further said in the *Gulick case:* "A proceeding for an injunction is personal against the individual. * * * The defendant was the one, and the only one, responsible for the alleged wrong and the injunction sought was personal against him." Counsel have indicated no respect in which, under the record, the present decree is not effective to accomplish the purpose sought.

Counsel for plaintiffs in error point to a permit to build the proposed dam granted by the Department of Purchases and Construction, insisting that it bars the present proceeding and that the remedy of defendants in error was to appeal from the order granting said permit. (Cahill's Stat. 1929, chap. 19, par. 85.) The permit was granted to the Druce Lake Improvement Association, the Third Lake West Side Improvement Association and the Sunshine Improvement Association. Leaving out of consideration the fact that this permit does not run to plaintiffs in error but to three "associations" no longer in existence at the time the present suit was brought, attention should be directed to the following provision of the permit itself:

"(c) This authority does not in any way release the permitee from any liability for damage to persons or property caused by or resulting from the work covered by this permit, and does not sanction any injury to private property or invasion of private rights or infringement of any Federal, State or local laws or regulations." Such authority clearly constitutes no bar to maintenance of the present suit, the sole purpose of which is to enjoin threatened injury to the property rights of defendants in error.

The decree of the circuit court of Lake county is affirmed.

Per CURIAM: The above opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*