(No. 22018.—

THE BARRINGTON HILLS COUNTRY CLUB *et al.* Defendants in Error, *vs.* THE VILLAGE OF BARRINGTON, Plaintiff in Error.

*Opinion filed June 15, 1934.*

DeYoung, J., dissenting.

Maloney & Wooster, and Wetten, Pegler & Dale, for plaintiff in error.

Oscar S. Seaver, and Sanders, Childs, Bobb & Wescott, (William L. Bourland, of counsel,) for defendants in error.

Otto Kerner, Attorney General, (M. E. Cox, of counsel,) as *amicus curiæ.*

Mr. Justice Farthing delivered the opinion of the court:

A writ of error was sued out of this court to review the record in this case in the circuit court of Lake county, to which the cause was transferred by change of venue from the circuit court of Cook county. The defendants in error filed their bill of complaint in the latter court on February 3, 1926. They were riparian owners of lands on Flynn (or Flint) creek, and sought a permanent in-

junction against the village of Barrington, plaintiff in error, to prevent it from discharging sewage and the efflux from its sewage treatment plant into the creek above their premises. The lands, sewage treatment plant and the creek are situate in Lake county. The village lies in Lake and Cook counties. The creek flows into the village from the northeast and out of the village to the northwest and empties finally into Fox river. Its source is about three and one-half miles from the village. It is dry during the summer, except for water-holes and small ponds or lakes along its course. It is fed by springs and receives the surface water of the territory it drains. Except for the country club, complainants are the owners of farms on which they maintain country homes. The value of the land is variously estimated and is placed as high as $3000 per acre. Drains were constructed, and water from wells supplying the village, surface water mixed with sewage, industrial waste and the effluent water from a sewage treatment plant were discharged into the creek above the lands of the defendants in error. Surface waters from barnyards and pastures drained into the creek above the village. On June 9, 1925, plaintiff in error passed an ordinance providing for a new sewer system.

One of the defendants in error, Hart, had brought a similar action in 1911, which was dismissed in 1914 after the village had improved conditions by the erection of a sewage treatment plant. After the present suit was at issue in the circuit court of Cook county it was referred to a master in chancery on September 27, 1926. After testimony had been taken from time to time for two and a half years he filed his report on March 29, 1929. Objections to the master's report were filed on March 29, 1929, by the plaintiff in error, and on May 21, 1929, it filed a motion for a change of venue, setting out that the suit had been filed in the wrong county. On that day it amended its answer and alleged that all the real estate of the de-

fendants in error was located in Lake county, and that, therefore, the circuit court of Cook county was without jurisdiction to hear and determine the cause. On June 4, 1929, defendants in error amended their bill of complaint and alleged that the village of Barrington was situate in both Cook and Lake counties, that the sewer system was located in both of those counties, and that the village water system obtained water from deep wells located in Cook county. It further alleged that sewage from residences, business houses, etc., in that part of the village in Cook county as well as that in Lake county was emptied into the creek, and that a new system of underground pipes and a new sewage treatment plant had been completed by the plaintiff in error in 1927, which system extends into both counties. The plaintiff in error answered substantially as before. It denied that the effluent from the sewage treatment plant impaired or polluted the stream, and denied that the sewers could constitute or create a nuisance, because, it said, that sewers were not only permitted but are required by law. October 15, 1929, an order was entered changing the venue to the circuit court of Lake county, whereupon a transcript of the proceedings had in the circuit court of Cook county, including the master's report, testimony and exhibits, was made up and filed in the circuit court of Lake county on November. 7, 1929.

On November 19, 1929, plaintiff in error filed a cross-bill, alleging that an act had gone into effect entitled, "An act to establish a sanitary water board and to control, prevent and abate pollution of the streams, lakes, ponds and other surface and underground waters in the State." (Laws of 1929, p. 386.) It further alleged that a complete remedy was afforded to the defendants in error by the act and that exclusive jurisdiction over the matters in controversy was given to the sanitary water board, wherefore the circuit court had no jurisdiction and should dismiss the original bill of complaint. Successive cross-bills

were stricken. On April 11, 1930, by leave of court, plaintiff in error filed an engrossed amended new cross-bill. This alleged that pursuant to notice to defendants in error a hearing was had before the sanitary water board under the act, and that as a result, on March 8, 1930, a permit was issued by the board to the village of Barrington to construct a new sewer system and treatment plant and to discharge the efflux from the combined storm-water and sewage treatment plant into the creek. This cross-bill prayed that the court take cognizance of the act of the legislature and decree that it was without jurisdiction to proceed further upon the original bill of complaint.

Defendants in error filed an answer by which they challenged the constitutionality of the act in a number of particulars. A motion to strike the last cross-bill was made and taken with the case. This motion also asked that the cause be submitted to the court on the original bill as amended and the answer, together with the master's report and the evidence taken before him. When the cause came on for a hearing on this motion on June 24, 1930, counsel for both plaintiff in error and defendants in error stated, in response to an inquiry by the court, that whatever additional testimony they had was cumulative and covered conditions existing subsequent to the taking of testimony before the master of the circuit court of Cook county. They stated that they did not desire to introduce further testimony. Thereupon the court announced that it would read the testimony and make a decision. The court filed a written opinion on November 17, 1930, in which it suggested that a conference be arranged between counsel to frame the decree. Notice was given that a decree would be presented, and on May 18, 1931, the court allowed plaintiff in error's motion that the objections filed to the report of the master stand as exceptions and overruled its motion to strike the master's report and the evidence taken by him, made on the ground that the circuit court of Cook county

was without jurisdiction to make an order of reference. The exceptions were overruled and a decree was rendered in accordance with the prayer of the bill of complaint as amended and supplemented. The engrossed new amended cross-bill was dismissed. The decree provided that it should go into effect immediately but that it should not go into effect as to the present sewer system and sewage treatment plant for one year, and that upon notice to defendants in error and a showing of diligence and necessity for additional time to put in effect plans to comply with its terms by plaintiff in error, additional time might be granted.

On July 9, 1931, the record shows an order presented asking that the court direct that the objections to the master's report stand as exceptions, and that on that day plaintiff in error introduced the testimony of three additional witnesses. This testimony was introduced to show the efficiency of the disposal plant and acquiescence by defendants in error in the use of the creek to receive the efflux from the treatment plant over a long period of years.

A large number of witnesses were examined and the testimony in the record is voluminous and to a very considerable degree conflicting. While some of these witnesses were of the opinion, from their observation of the creek and the conditions on the premises in question, that no nuisance was created, we agree with the chancellor that the decided preponderance of the evidence sustains the conclusion that the water was so polluted as to render it unfit for domestic use or for the drinking by domestic animals. The evidence also shows that an abnormal flow of water was caused by the plaintiff in error's waterworks, supplied by wells. These conclusions are strongly re-inforced by the inherent probabilities of the case.

Without going into the great mass of testimony and exhibits in detail, it is shown, without contradiction, that witnesses saw such objects in and along the creek below the sewer outlet of plaintiff in error as human feces, sewer

moss (called algæ) on the creek bed, sludge, (which is decomposed sewage,) scum, debris, condoms and sewage worms at various times. Bacteriological examinations made from time to time by other witnesses showed bacilli coli, which come from the human alimentary canal, present in such large numbers that the water could not be purified by filtration and chlorination. While there is evidence that one could read a newspaper through the clear effluent which escaped from the treatment plant and that it was odorless, and that gold-fish were kept alive in a sample of it, yet there is other evidence that the water of the creek was so polluted as to give off the odor of sewage and to create a noxious stench, especially during the dry season and immediately following a downpour of rain. Raw sewage flowed from the by-passes directly into the creek when any considerable precipitation of rain occurred. While the treatment plant was shown to be modern and to be equipped with an Imhoff tank, yet it took out of the sewage only sixty to seventy per cent of the solids and no part of the liquids. This threw into the small creek the solid waste from the equivalent of thirty to forty per cent of the population of 2850 inhabitants of the village of Barrington and the liquid waste from the entire population and the same percentages of waste from its industrial plants, such as creameries, cheese factories, etc.

We are urged to hold that the chancellor erred in considering the evidence taken and reported by the master in chancery of the circuit court of Cook county; that where the sewage was treated according to the best known methods the village of Barrington has an inherent right to use the creek, which is the only available water-course, as an outlet for the efflux from its sewage treatment plant; that the evidence does not show that a nuisance existed; that the conveniences should be balanced—that is, weight should be given to the fact that the village spent a large sum of money building its sewer system and treatment plant, whereas the

value to defendants in error of the right to have the creek in its natural state is said to be small, or that the damage done to their property, if any, is much smaller than the damage which would be occasioned to plaintiff in error if a permanent injunction were granted against it. Plaintiff in error also urges that the defendants in error are limited to an action at law for damages because of the permit issued to the village under "An act to establish a sanitary water board," etc., approved June 25, 1929. (Laws of 1929, p. 386.)

Plaintiff in error relies upon *Munger* v. *Crowe*, 219 Ill. 12, and *Swigart* v. *Highway Comrs.* 277 id. 281, in support of its contention that the chancellor erred when he denied its motion to strike from the files and to refuse to consider the evidence taken under the order of reference made by the circuit court of Cook county. These two cases were suits for injunction and were instituted in the wrong counties. These cases are not in point because of the difference in the facts involved. In the case before us, counsel for both sides agreed in open court on June 24, 1930, that the chancellor should take the cause upon the pleadings and the evidence taken by the master in chancery. Counsel stated that whatever additional witnesses they had, if called, would give cumulative testimony. However, afterward plaintiff in error obtained leave and examined three additional witnesses. If the testimony objected to had been taken by way of deposition it would be in substantially the same form as it now is.

In our view of these facts no question as to the jurisdiction of the circuit court of Cook county to make the order of reference was properly raised and preserved for our consideration.

The claim cannot be sustained that the village of Barrington had an inherent right to use the creek as the only available natural water-course to carry off its sewage and waste. water. In *Elser* v. *Village of Gross Point,* 223 Ill.

230, the village had an easement to drain water across the land of the complainant. It sought to discharge a greater quantity of water into the ditch than had been previously carried by it. Although it was an artificial drain the same principles were there involved, and the discussion is pertinent to the questions presented here for our consideration. We there said: "It is strenuously contended that the village of Gross Point has a right, under the powers conferred upon it by the statute, to make this proposed improvement, and that a court of equity should not interfere with it in the discharge of its duties to the public. * * * A municipal corporation has no greater right than a natural person to divert surface waters in large quantities by an artificial channel upon the land of another except it may do this in the exercise of eminent domain, upon making just compensation as required by the constitution. * * * Nor can this municipality proceed with this proposed improvement and relegate appellant to his action at law for the damages sustained. While equity will not take jurisdiction, at the suit of one whose property, or some part of it, is not actually taken, to restrain the making of an improvement or building a railroad, still where, as here, the threatened act involves an actual taking, the expropriation will be enjoined until the damages are ascertained and paid in the manner provided by the law." Here, in addition to the placing of an additional burden upon the servient estates of defendants in error, as lower riparian owners, through the drainage of water coming from the water system and deep wells supplying water to the village, another property right is invaded, viz., by pollution of the stream. It makes no difference whether some pollution was found in the stream other than that which the plaintiff in error seeks to create. We decided this point adversely to the contention of the plaintiff in error in the case of *Barrett* v. *Mt. Greenwood Cemetery Ass'n,* 159 Ill. 385. We need not repeat what we said in that case.

The law in Illinois is, and has long been, settled upon the controlling questions involved in this case. A private nuisance may be enjoined by a suit in equity or the party suffering damage and injury may proceed at law, and the remedies are concurrent and not exclusive. (*Springer* v. *City of Chicago,* 308 Ill. 356; *Village of Dwight* v. *Hayes,* 150 id. 273; *City of Kewanee* v. *Otley,* 204 id. 402.) While it is contended here that those cases must have involved raw sewage as distinguished from the efflux from a sewage treatment plant of modern design, sewage shown by this record to contain human feces, debris, condoms and other filth remains sewage. The defendants in error, as riparian owners on a stream thus polluted, whether it be polluted once, twice, three times or more a season or for three or four per cent of all the days of each year, have a right to protection against such invasion of their property rights; and if the effluent is considered to be as pure as contended by the plaintiff in error, the defendants in error still have the other property right, which must be protected, to have the stream carry only such a volume of water as would be naturally collected by the drainage of the basin in which it flows. This court has repeatedly held that the taking of property by a municipality or other body vested with the power of eminent domain will not be tolerated except in the manner prescribed by statute, and the taking must be accompanied by payment at the time the property or right is taken. *People* v. *Smart,* 333 Ill. 135; *Board of Trade Telegraph Co.* v. *Barnett,* 107 id. 507; *Elser* v. *Village of Gross Point,* 223 id. 230; *Moore* v. *Gar Creek Drainage District,* 266 id. 399; *Springer* v. *City of Chicago,* 308 id. 356.

Conveniences have never been balanced in this State and equities have never been weighed where a private right or private property was sought to be taken by other than due process of law and the party injured sought to enjoin such taking. It is not necessary to repeat the cases cited

above, but they, and many others in this and other jurisdictions whose decisions we respect, express this same view. We are aware of the decisions in *Winchell* v. *Gity of Waukesha,* 110 Wis. 101, 85 N. W. 668, *Attorney General* v. *City of Grand Rapids,* 175 Mich. 503, 141 N. W. 890, *Smith* v. *Sedalia,* 244 Mo. 107, 149 S. W. 597, *Horine* v. *People's Sewer Co.* 200 Mo. App. 223, 204 S. W. 735, *City of Valparaiso* v. *Hagen,* 153 Ind. 337, 54 N. E. 1062, and *City of Harrisonville* v. *Dickey Clay Manf. Co.* 289 U. S. 334, 77 L. ed. 801. We have never followed the rules announced in those decisions, and in spite of the argument made that there is a necessity caused by changing conditions, we are not disposed to brush aside the decisions contained in an unbroken line of authorities found in well considered cases over a long period of years. No *laches* was pleaded, nor was it attempted to set up a right by prescription in answer to the bill of complaint. The proofs do not show either to exist in this case.

The last contention of the plaintiff in error necessary to be considered is that the permit issued on March 8, 1930, by the Sanitary Water Board under the act of 1929 is a complete bar to the suit brought by the defendants in error, and therefore the chancellor erred in dismissing the cross-bill. In the view we take of this statute we can not consider the contentions made by the defendants in error that this act is unconstitutional. The act only empowers the Sanitary Water Board to control, prevent and abate pollution of streams where the condition is detrimental to "the public health, or to the health of animals, fish, or aquatic life, or detrimental to the practicable use of the waters for recreational purposes." This act does not extend the authority of the Sanitary Water Board to include control of private property rights of riparian owners and does not authorize any encroachment upon such rights. The powers created are to be exercised only on behalf of the public and affect its rights alone. This is illus-

trated, first, by the fact that a municipality which seeks a permit under this act need not give notice to lower riparian owners of land; also by the fact that under section 11 the board and its representatives are authorized to "enter and cross all lands in this State," but only on condition that this be done "without doing damage to private property;" and further, that section 12 makes a violation of an order of the board a nuisance and provides for abatement thereof by an action brought by the Attorney General "in the manner in which other nuisances are abated." Such a nuisance is clearly of a public rather than a private nature. In this suit only private property rights of riparian owners are involved. The nuisance sought to be enjoined is one of a private rather than a public nature. While the permit might bar an action brought by the Attorney General, it constitutes no bar to this suit. A glance at the language of the permit itself sustains this conclusion. Its third section provides: "This authority does not in any way release the permittee from any liability for damage to person or property caused or resulting from the installation, maintenance or operation of the sewerage system located and constructed in accordance with the plans and specifications herein referred to." In *Druce* v. *Blanchard,* 338 Ill. 211, a suit was brought by riparian owners to enjoin an increase in the height of a dam across the outlet from a chain of lakes. The permit which was there urged as a defense was obtained from the Department of Public Works and Buildings under section 84 of chapter 19 of Cahill's Revised Statutes of 1929. This department had been given the authority previously vested in the Rivers and Lakes Commission, which was created by the act of 1911. (Laws of 1911, p. 115.) In discussing the permit in that case we said at page 221: "Leaving out of consideration the fact that this permit does not run to plaintiffs in error but to three 'associations' no longer in existence at the time the present suit was brought, attention

should be directed to the following provision of the permit itself: '(c) This authority does not in any way release the permittee from any liability for damage to persons or property caused by or resulting from the work covered by this permit, and does not sanction any injury to private property or invasion of private rights or infringement of any Federal, State or local laws or regulations.' Such authority clearly constitutes no bar to maintenance of the present suit, the sole purpose of which is to enjoin threatened injury to the property rights of defendants in error." The decision in that case is also controlling in the case before us, and the chancellor was correct in dismissing the cross-bill, which relied upon the permit from the Sanitary Water Board as a bar to the suit of the defendants in error.

For the reasons indicated the decree of the trial court is affirmed.

*Decree affirmed.*

Mr. Justice DeYoung, dissenting.