The City of Northlake, a Municipal Corporation, Plaintiff and Counterdefendant-Appellee, Harold Alden, et al., Plaintiffs-Appellees, v. The City of Elmhurst, a Municipal Corporation, Defendant and Counterplaintiff-Appellant, Charles Weigel, Jr., Mayor of the City of Elmhurst, and Robert T. Palmer, City Manager of the City of Elmhurst, Defendants-Appellants.

Gen. No. 48,901.

First District, Third Division.

May 1, 1963.

Supplemental opinion May 28, 1963.

Rehearing denied May 28, 1963.

George E. Billett, of Chicago (Ervin F. Wilson and Thomas A. McManigal, of counsel), for defendants and counterplaintiff-appellant.

Edward B. O'Shea, Jr., and Robert Irmiger, of Chicago, for plaintiffs and counter-defendant.

MR. JUSTICE McCORMICK delivered the opinion of the court.

An action was brought by the City of Northlake and certain of its residents seeking an injunction against the City of Elmhurst, its mayor and city manager, to restrain them from allowing the discharge of water and sewage alleged to be flowing upon Northlake property from a certain portion of the Elmhurst sewer system through a 72-inch drain. The City of Elmhurst filed a counterclaim seeking an injunction to restrain Northlake from maintaining certain sewers and a concrete dam as obstructions to natural drainage along an alleged certain natural stream or watercourse. The case was referred to a master in chancery who made findings and recommendations in favor of the plaintiffs and against the defendant and counterplaintiff. The court entered a decree in accordance with the master's report after overruling the defendant-counterplaintiff's exceptions thereto, and the defendants were perpetually restrained and enjoined from discharging the contents of a 72-inch sewer onto property in the City of Northlake.

The City of Northlake is a municipal corporation in Cook County, and the City of Elmhurst is a municipal corporation in Du Page County, Illinois. The western city limits of Northlake and the eastern city limits of Elmhurst meet at the Du Page-Cook County line near the junction of North Avenue and Lake Street. The City of Elmhurst owns certain land located in the City of Northlake in Cook County between Lake Street and North Avenue and east of the junction of North Avenue and Lake Street. On the land owned by Elmhurst in Northlake, Elmhurst maintains a sewer of a diameter of 72 inches, which sewer flows in an easterly direction and terminates in a 72-inch outlet, or outfall, on land owned by Elmhurst. The 72-inch sewer is made up by the junction of two combined

sanitary and storm sewers, and disposes of human waste, household waste and water, and storm water. A 54-inch sewer, which is one of the tributaries to the 72-inch sewer, was built in 1928. This sewer flows in a northerly direction along the west side of the county line. The other tributary is a 48-inch sewer, built in 1922, which flows easterly along the south side of North Avenue and then southerly along the west side of the county line, to join the 54-inch sewer, both of which enter the 72-inch sewer. The 72-inch sewer then flows east from the junction to the outlet in Northlake. A few feet east of the junction of the 48- and 54-inch sewers the 72-inch sewer has an 18-inch opening in its floor. Through this 18-inch opening, by the force of gravity, sewage in the 72-inch sewer flows into a "wet well," which is lower than the 18-inch opening. The "wet well" is connected with a lift station, or pumping station, which was built in 1937. This lift station is owned and operated by Elmhurst on land it owns in Northlake. This lift station has two electrically operated automatic pumps which lift the sewage deposited in the "wet well" and pump it untreated into a 10-inch main, which carries the sewage pumped into it in a westerly direction along North Avenue and then into the gravity system of Elmhurst, and eventually the sewage from the lift station enters Elmhurst's treatment plant at Route 83 and St. Charles Road, approximately two or three miles from the lift station. In the event the 18-inch opening in the 72-inch sewer is not large enough to take all the sewage from the 72-inch sewer, or if the capacity of the "wet well" or pumps is overtaxed, or if the pumps in the lift station fail to operate for any reason, the sewage in the 72-inch sewer flows past the 18-inch opening and eastward to the outlet, or outfall, where this untreated sewage is then discharged and deposited on land in Northlake. The outlet of the

193

Elmhurst sewers is about 75 feet west of Railroad Avenue, and prior to the erection of the wall, or dam, the sewage flowed through the bed of the stream under Railroad Avenue and into the Northlake sewer. The Northlake sewer is a storm sewer constructed in 1956. It is located in the bed or channel of the stream at a point east of Railroad Avenue in Northlake, and is rectangular, 30 by 36 inches in size. It is undisputed that until 1956 there had existed a natural stream or watercourse which passed the 72-inch sewer of Elmhurst, which sewer emptied into the stream. The stream then flowed easterly under a bridge on Railroad Avenue and through what is now Northlake to Addison Creek. Elmhurst became a municipal corporation before 1900, and Northlake in 1948. In 1937 the population of Elmhurst was 10,000 to 15,000, and in 1960 its population was 37,000. No changes were made in the Elmhurst sewers from the time of their construction until the time of the suit, except for the abandonment of the treatment plant which had been located two or three miles from the "wet well" and the reconstruction of the lift station. As we have pointed out, the purpose of the lift station is to carry sewage to the new Elmhurst treatment plant two or three miles from the lift station.

When sewage is discharged onto the Northlake property the sewage runs in an easterly and southeasterly direction, and on many occasions sanitary sewage of all kinds, including human waste, household waste water, and storm water, had been deposited on the property of residents of Northlake.

From 1928 to 1937 the sewage in the 72-inch sewer was treated in a plant located west of the outlet of the 72-inch sewer. The plant was abandoned in 1937. The area served by the 54-inch and 48-inch sewers previously referred to was built up at varying times from 1920 to 1960.

194

In 1956 there were built in Northlake, over the bed or channel of the natural stream or watercourse, a bowling alley and two parking lots, one to the east and one to the west. The stream was closed up and the City of Northlake installed storm drains heretofore referred to. In 1961 Northlake erected a concrete wall or dam immediately west of the bridge on Railroad Avenue.

The City of Elmhurst strenuously contends that it had a prescriptive right to use the channel of the stream for disposal of surface water and sewage, and cites and quotes from Mauvaisterre Dist. v. Wabash Ry. Co., 299 Ill 299, 132 NE 559, in which the court, in a case involving drainage of surface water, holds that the "owner of a servient heritage has no right, by embankment or any other artificial means, to stop the natural flow of surface water from such servient heritage and thus throw it back upon the dominant heritage." The court further holds that in Illinois, as far as the relative rights of the dominant and servient owners are concerned, there is no difference between watercourses, as the term is understood at common law, and surface water which flows in a regular channel at certain times only. In Broadwell Spec. Drainage Dist. No. 1 v. Lawrence, 231 Ill 86, 83 NE 104, the court holds that the owner of a dominant heritage may by ditches or drains collect the surface water falling upon his estate and by such ditches or drains conduct the water into a natural water channel, even if by so doing the quantity of water cast upon the servient heritage is thereby increased. The aforementioned cases also hold that the uninterrupted use of a channel for more than twenty years results in an easement and right acquired by prescription. Also see Gough v. Goble, 2 Ill2d 577, 119 NE2d 252.

There can be no quarrel with the rules of law previously stated. In the case before us, however, we are

not dealing with a prescriptive right of drainage of surface water. The question before us is whether there can be any prescriptive right acquired by the City of Elmhurst to throw raw sewage upon and into the adjacent municipality of Northlake.

There is evidence in the record sufficient to support the findings in the decree in accordance with the findings of the master, that sewage was deposited in varying amounts upon the land of certain persons living in the City of Northlake and upon the land in the City of Northlake in a four-block area surrounding these homes; that the sewage consisted of human waste, storm water and other debris; that the deposits from this sewage at times were associated with rains, but at other times no rain preceded the flowage. There is also testimony in the record which amply supports the finding in the decree that "on various dates the area east of the outlet showed evidence of sanitary sewage having been discharged from the outlet; gray water was present, which is indicative of undigested sanitary sewage, and there were a large number of particles that would normally be contained in sanitary sewage in and about this area. There was further evidence that the water was greenish, indicating that oxidation was taking place, and green algae was present; there were quite a large number of water creatures, rats, etc., and a strong odor similar to the odor of sanitary sewage was present." The court in its decree also refers to the standard used to measure polluted water known as the biochemical oxygen demand test, or BOD test. The Illinois Department of Health has determined that the BOD of a sewer discharging into an intermittent stream should be less than 50 parts per million. Such a discharge would not create a health hazard, cause odor, or be unsightly in the bed of the stream. A sample of the contents of the ditch into which this sewage had flowed was taken. It had

a gray and cloudy appearance and a pungent odor. The sample was delivered to the Illinois Department of Public Health. It was analyzed and showed a BOD of 347 parts per million. Normal sewage runs between 200 and 300 parts per million BOD.

In Barrington Hills Country Club v. Barrington, Village of, 357 Ill 11, 191 NE 239, the Barrington Hills Country Club and other riparian owners of land on Flynn Creek sued the Village of Barrington to prevent it from discharging sewage and the efflux from its sewage plant into the creek above their premises. From the opinion it appears that the creek was dry during the summer except for small ponds along its course, and that it was fed by springs and received the surface water of the territory it drained. Drains were constructed by the city, and water from wells supplying the village, surface water mixed with sewage, industrial waste and the effluent water from a sewage treatment plant were discharged into the creek above the lands of the plaintiffs. In that case the Supreme Court found itself in agreement with the chancellor that the preponderance of the evidence sustained the conclusion that the water was polluted. In that case it was argued that the Village of Barrington had an inherent right to use the creek as the only available watercourse to carry off its sewage and waste water. The court held that the law in Illinois has been long settled on this question, and said: "The claim cannot be sustained that the village of Barrington had an inherent right to use the creek as the only available natural water-course to carry off its sewage and waste water." The court cited Elser v. Village of Gross Point, 223 Ill 230, 79 NE 27, where it was held that a municipal corporation has no greater right than a natural person to divert surface waters in large quantities by an artificial channel upon the land of another. The court further said that a private

197

nuisance may be enjoined by a suit in equity or the party suffering damage and injury may proceed at law, and the remedies are concurrent and not exclusive, citing Springer v. City of Chicago, 308 Ill 356, 139 NE 414; Village of Dwight v. Hayes, 150 Ill 273, 37 NE 218; and City of Kewanee v. Otley, 204 Ill 402, 68 NE 388. With reference to those cases the court said:

> "While it is contended here that those cases must have involved raw sewage as distinguished from the efflux from a sewage treatment plant of modern design, sewage shown by this record to contain human feces, debris, condoms and other filth remains sewage. The defendants in error, as riparian owners on a stream thus polluted, whether it be polluted once, twice, three times or more a season or for three or four per cent of all the days of each year, have a right to protection against such invasion of their property rights; and if the effluent is considered to be as pure as contended by the plaintiff in error, the defendants in error still have the other property right, which must be protected, to have the stream carry only such a volume of water as would be naturally collected by the drainage of the basin in which it flows."

In Ruth v. Aurora Sanitary Dist., 17 Ill2d 11, 158 NE2d 601, the trial court entered a decree in favor of the plaintiff finding that the discharge of sewage into the Fox River constituted a nuisance which should be abated. The decree ordered the trustees of the District to forthwith abate the nuisance caused by the discharge of untreated or inadequately treated raw sewage into the Fox River, and ordered the trustees to construct the proposed projects necessary to abate this nuisance and to employ competent engineers to

plan and draw up specifications to that end. The Supreme Court sustained the decree of the trial court, but ordered that the trial court eliminate the portion of the decree which directed the trustees to retain competent engineers to construct additional and secondary settling tanks, etc. The court said: "The method of planning, constructing and financing is left to the board of trustees. They may take such action as they deem necessary to comply with the court's order."

■ ■ City of Murphysboro v. Sanitary Water Board of Illinois, 10 Ill App2d 111, 134 NE2d 522, reviewed an order of the Sanitary Water Board of the State of Illinois which directed the City of Murphysboro to cease discharging its untreated sewage into the Big Muddy River. The evidence showed that there was pollution of the water. The court used the definition of pollution set out in Illinois Revised Statutes, chap 19, par 145.2, and also called attention to paragraph 145.10 of the same statute which prohibits the disposal by any person of organic or inorganic matter into the waters of the State which shall cause pollution. Paragraph 145.2(j) includes municipalities in the definition of "persons." In the instant case, had there been no change in the conditions which existed before the filling up of the bed of the stream by Northlake in 1956 Elmhurst still would not have any right to discharge raw sewage into Northlake. Under the law as it now exists in this State neither a person nor a municipality can throw raw sewage upon the lands of another municipality nor pollute the waters flowing through such municipality.

Since 1937 there has been a continuous increase in the sewage drained from Elmhurst resulting from the increase in population. The growth of Northlake was apparently slower, but was constant. The evidence submitted to the court on behalf of Elmhurst was that

199

the sewers used by Elmhurst were in accordance with good engineering practice. That evidence is utterly immaterial as the question of good engineering practice depends entirely upon all of the surrounding circumstances, and in our opinion it is not good engineering practice to have sewers constructed which will during heavy rains, stoppage of the pumps, etc., cast the sewage on property of another.

It was also brought out that there might be two methods of handling a situation such as exists in the Elmhurst drainage area. One was that which is actually in use, where the one sewer carries the surface drainage water, plus the waste water and other sewage. Drainage water, waste water and sewage are drained by the same sewer of the city. The other method is to have a dual sewage system, one which is solely for the purpose of draining off surface water, and the other for carrying what is commonly known and referred to as sewage. Had the countercomplaint of Elmhurst been that surface water alone was not being properly disposed of by the substituted drains which were installed by Northlake, there might be more support for its theory.

There have been no changes in the construction of the Elmhurst 72-, 54-, or 48-inch sewers since they were built except that the location of the lift station was changed in 1960, but its capacity and performance were not affected.

■ The court overruled exceptions to the master's report and found in its decree, following the findings of the master, that sewage, including human waste, is being deposited in the City of Northlake on properties of residents of that city, and it further finds that the City of Elmhurst has no right to so discharge sewage and there is no duty placed on the City of Northlake to dispose of the sewage of the City of Elmhurst. It further finds that the sanitary

and storm sewage system is not adequate to drain the flow of sewage and that there is a duty resting on the City of Elmhurst to so dispose of its sewage so that such disposition does not constitute a nuisance and there would be no harmful effects on owners of adjoining property. The findings of the court are not against the manifest weight of the evidence. The court was correct in dismissing for want of equity the counterclaim of the City of Elmhurst which sought to require the City of Northlake to remove the dam or barrier it had erected to prevent the Elmhurst sewage flowing onto its lands. The court was equally correct in its decree ordering that the City of Elmhurst and the other defendants joined with them be perpetually restrained and enjoined from discharging the contents of the 72-inch sewer on their property in the City of Northlake.

■ In the brief the City of Elmhurst asks this court what Elmhurst can do. Elmhurst has neglected to do anything since the time when the sewers were originally constructed. At the time when it changed the wet well and lift station it could have enlarged the system so as to provide for the increased population. No request appears in the record by the City of Elmhurst for time to make some arrangement, temporary or otherwise, for the disposal of the sewage in question. This court does not think it can interject itself into the matter by making suggestions or changing the decree with reference to the mode in which Elmhurst must proceed. Barrington Hills Club v. Barrington, supra.

The decree of the Circuit Court of Cook County ordering that the City of Elmhurst, a municipal corporation, Charles Weigel, Jr., Mayor of the City of Elmhurst, and Robert T. Palmer, City Manager of the City of Elmhurst, and their agents and employees, be permanently enjoined from discharging the contents

of the 72-inch sewer onto property in the City of Northlake, and that the counterclaim filed by the City of Elmhurst against the City of Northlake be dismissed with prejudice, is affirmed.

Affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.

### SUPPLEMENTAL OPINION

In the opinion we make the statement that the record shows no request was made by the City of Elmhurst for time to make arrangements for the disposal of the sewage in question. In the petition for rehearing the City of Elmhurst questions that statement and points out that there was some discussion in the trial court concerning an extension of time to permit the City of Elmhurst to act before the decree went into effect. In that discussion counsel for Elmhurst stated that it might be a matter of several years until Elmhurst could amend its system. Counsel for Northlake responded that the case was filed in 1958, and that the discussion then taking place with reference to the entry of the decree was in 1962. Counsel pointed out that in the interim nothing had been done by the City of Elmhurst with respect to the sewage discharge complained of by Northlake. He further stated that if the decree was entered by the court the City of Elmhurst could come in later and upon a showing make a request for an extension of time. This discussion between counsel bears out the statement in the opinion. In the petition for rehearing it is further stated that the City of Elmhurst is and has been making a study since 1957 of the entire sewage system. We think that a suspension or modification of the injunction upon a proper showing by the City

202

of Elmhurst is a matter properly within the discretion of the trial court. The opinion sufficiently points out that the City of Elmhurst had acquired a prescriptive right to discharge surface and storm water through the 72-inch sewer.